UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

DGE INVESTMENTS, INC., an Illinois
corporation, FUN ART PARTIES, LLC, a
Pennsylvania limited liability company,
KKRK, LLC, an Oklahoma limited liability
company, VICE FLUID ART,          INC., a
Florida corporation, HAWAII          FLUID
ART GULF COAST, LLC, an Alabama
limited liability company, BOLTIMO
CORPORATION, a Michigan corporation,
DP CREATIVITY LLC, an Illinois limited
liability company, HALEIWA ART
COMPANY, LLC, a Tennessee limited
liability company, BICENTENNIAL
VENTURES, LLC, a Colorado limited
liability company, CANDLEBY STUDIO 1,
LLC, an Indiana limited liability company,
OHANA CREATIONS, LLC, a South
Carolina limited liability company, 3FIFTY,
LLC, a Virginia limited liability company,
WOLF MOON, INC., a Colorado
corporation, LAVA CREATIONS, LLC, a
Missouri limited liability company,
FOXKNOX ENTERPRISES, INC., an
Arizona corporation, SAURIN PATEL,
ESK ENTERPRISE HHI, LLC, a South
Carolina Limited Liability Company,

Plaintiffs,

v.

HAWAII FLUID ART FRANCHISING,
LLC, a Texas limited liability company,
STRONG BRANDS, LLC, a Texas limited
liability company, HFA UNLIMITED, LLC,
a Texas limited liability company, HFA
SUPPLY, LLC, a Texas limited liability
company, HFA PAYROLL, LLC, a Texas
limited liability company, HFA SPARK,
LLC, a Texas limited liability company,
HFA TECHNOLOGIES, LLC, a Texas
limited liability company, HFA
MARKETING, LLC, a Texas limited
liability company, MAYA TALKS, LLC, a

Civ No. 3:25-cv-2687-S

1

Texas limited liability company, and MAYA
RATCLIFF and TRINITY KIRK,

Defendants.

## FIRST AMENDED COMPLAINT

NOW COME the Plaintiffs, DGE INVESTMENTS, INC., an Illinois corporation
("DGE"), FUN ART PARTIES, LLC, a Pennsylvania limited liability company ("Fun Art"),
KKRK, LLC, an Oklahoma limited liability company ("KKRK"), VICE FLUID ART, INC., a
Florida corporation ("Vice Art"), HAWAII FLUID ART GULF COAST, LLC, an Alabama
limited liability company ("HFA Gulf Coast"), BOLTIMO CORPORATION, a Michigan
corporation ("Boltimo"), DP CREATIVITY LLC, an Illinois limited liability company ("DPC"),
HALEIWA ART COMPANY, LLC, a Tennessee limited liability company ("Haleiwa"),
BICENTENNIAL VENTURES, LLC, a Colorado limited liability company ("Bicentennial"),
CANDLEBY STUDIO 1, LLC, an Indiana limited liability company ("Candleby"), OHANA
CREATIONS, LLC, a South Carolina limited liability company ("Ohana"), 3FIFTY, LLC, a
Virginia limited liability company ("3Fifty"), WOLF MOON, INC., a Colorado corporation
("Wolf Moon"), LAVA CREATIONS, LLC, a Missouri limited liability company ("Lava"),
FOXKNOX ENTERPRISES, INC., an Arizona corporation ("FoxKnox"), SAURIN PATEL
("Patel"), ESK ENTERPRISE HHI, LLC, a South Carolina limited liability company ("ESK")
(each a "Plaintiff" or "Franchisee", and collectively "Plaintiffs" or "Franchisees"), through their
undersigned counsel, for their Complaint against Defendants, HAWAII FLUID ART
FRANCHISING, LLC, a Texas limited liability company ("HFA" or "Franchisor"), STRONG
BRANDS, LLC, a Texas limited liability company ("Strong"), HFA UNLIMITED, LLC, a Texas
limited liability company ("HFAU"), HFA SUPPLY, LLC, a Texas limited liability company
("HFA Supply"), HFA PAYROLL, LLC, a Texas limited liability company ("HFAP"), HFA

SPARK, LLC, a Texas limited liability company ("HFA Spark"), HFA TECHNOLOGIES, LLC, a Texas limited liability company ("HFA Tech"), HFA MARKETING, LLC, a Texas limited liability company ("HFAM"), MAYA TALKS, LLC, a Texas limited liability company ("MT"), and MAYA RATCLIFF ("Ratcliff") and TRINITY KIRK ("Kirk").  In support thereof, Plaintiffs allege as follows:

NATURE OF THE ACTION

1.      Each of the Plaintiffs entered into a "Franchise Agreement" and/or a "Development Agreement with Defendant HFA and is a franchisee in the Hawaii Fluid Art franchise system ("System").  Each Plaintiff Franchisee, pursuant to their respective Franchise Agreements, has been granted an exclusive license to operate a Hawaii Fluid Art "Studio" using HFA's Marks and System in accordance with the Franchise Agreements.

2.      In order to induce the Plaintiffs to enter into the aforesaid agreements, the Defendants conspired and made false, fraudulent, misleading, material misrepresentations to Plaintiffs about past and future financial performance of franchised businesses and the HFA System.  Once Plaintiffs executed agreements, and during the term of those agreements, HFA and other Defendants were in  repeated, continuous, bad faith and willful breach of the subject agreements, arbitrarily and discriminatorily enforcing same, violating applicable law, engaging in neglect and refusal to provide Plaintiffs with support and assistance, implementing undisclosed fees and costs, charging and imposing fees which are not authorized under the Franchise Agreements, imposing excessive overcharges in conjunction with mandatory purchases, engaging in retaliatory and discriminatory misconduct, failing and refusing to offer, provide or create any solutions to address the systemwide issues and concerns of the Plaintiffs in bad faith, and unlawfully and improperly interfering with the Plaintiff Franchisees' constitutional rights of association.

3

3.      Defendants have made, and continue to make, false and pretextual statements to blame the Plaintiffs for the system-wide failures of Hawaii Fluid Art, which was materially flawed and premised upon fraud before execution of the Franchise Agreements and since that time, which induced Plaintiffs to remain as Franchisees.  At all relevant times, Defendants had full knowledge that their franchise model and cost structure was never viable yet concealed and misrepresented these facts by making false and willful misrepresentations to Plaintiffs in order to induce them to execute the Franchise Agreements.

4.      As a result of Defendants' illegalities and malfeasance, Plaintiff Franchisees have sustained significant monetary damages, which malfeasance continues unabated and which damages continue to accrue to the significant detriment of Plaintiffs.

THE PARTIES

PLAINTIFFS

5.      Plaintiff DGE is an Illinois corporation, with its principal place of business at 626 East 4th Avenue, Naperville, Illinois 60540, and is a party to a Franchise Agreement with Defendant HFA dated July 2, 2023.

6.      Plaintiff Fun Art is a Pennsylvania limited liability company, with its principal place of business at 3325 Hamilton Boulevard, Unit 8, Allentown, Pennsylvania 18104, and is a party to a Franchise Agreement with Defendant HFA dated December 22, 2023. Mary Szakmeister and Virginia Ellen are the only members of Fun Art, and each is domiciled in, and maintains a true, fixed, and permanent home in Pennsylvania.  Neither member is domiciled in nor a citizen of Texas.

7.      Plaintiff KKRK is an Oklahoma limited liability company with its principal place of business at 4913 SW 130th Street, Oklahoma City, Oklahoma 73173, and is a party to a Franchise Agreement with Defendant HFA dated on or about August 21, 2022.  Linda Etherton is

the sole member of KKRK, and is domiciled in, and maintains a true, fixed, and permanent home in Oklahoma.  She is neither domiciled in nor a citizen of Texas.

8.      Plaintiff Vice Art is a Florida corporation with its principal place of business at 1160 Citrus Oaks Run, Winter Springs, Florida 32708, and is a party to a Franchise Agreement with Defendant HFA dated April 3, 2023.

9.      Plaintiff HFA Gulf Coast is an Alabama limited liability company with its principal place of business at 8780 Neumann Drive, Elberta, Alabama 36530, and is a party to a Franchise Agreement with Defendant HFA dated on or about March 10, 2023. Leslie Boothe is the sole member of HFA Gulf Coast, and is domiciled in, and maintains a true, fixed, and permanent home in Alabama.  She is neither domiciled in nor a citizen of Texas.

10.     Plaintiff Boltimo is a Michigan corporation with its principal place of business at 17535 Nick Drive, Macomb, Michigan, 48044, and is a party to a Franchise Agreement with Defendant HFA dated February 23, 2023.

11.     Plaintiff DPC is an Illinois limited liability company, with its principal place of business at 6232 157th Street, Oak Forest, Illinois 60452, and is a party to a Franchise Agreement with Defendant HFA dated on or about February 23, 2023.  Patrice O'Toole and David King are the only members of DPC, and each is domiciled in, and maintains a true, fixed, and permanent home in Illinois.  Neither member is domiciled in nor a citizen of Texas.

12.     Plaintiff Haleiwa is a Tennessee limited liability company with its principal place of business at 4007 Mossy Rock Lane, Franklin, Tennessee 37064, and is a party to a Franchise Agreement with Defendant HFA dated on or about February 16, 2023.  Becki Kuhl and Robert Kuhl are the only members of Haleiwa, and each is domiciled in, and maintains a true, fixed, and permanent home in Tennessee.  Neither member is domiciled in nor a citizen of Texas.

13.    Plaintiff Bicentennial is a Colorado limited liability company with its principal place of business at 6950 East Chenango Avenue, #556, Denver, Colorado 80237, and is a party to a Franchise Agreement with Defendant HFA dated February 1, 2024. Carlos A. Jury III and Elizabeth Jury are the sole members of Bicentennial, and each is domiciled in, and maintains a true, fixed, and permanent home in Colorado. Neither member is domiciled in nor a citizen of Texas.

14.    Plaintiff Candleby is an Indiana limited liability company with its principal place of business at 13882 Berenger Lane, Carmel, Indiana 46032, and is a party to a Franchise Agreement with Defendant HFA dated December 1, 2023. Oliver Schmidt is the sole member of Candleby, and is domiciled in, and maintains a true, fixed, and permanent home in Indiana. He is neither domiciled in nor a citizen of Texas.

15.    Plaintiff Ohana is a South Carolina limited liability company with its principal place of business at 12 Nickel Springs Drive, Easley, South Carolina 29642, and is a party to a Franchise Agreement with Defendant HFA dated March 17, 2023. Suzanne Overstreet and Joel Overstreet are the only members of Ohana, and each is domiciled in, and maintains a true, fixed, and permanent home in South Carolina. Neither member is domiciled in nor a citizen of Texas.

16.    Plaintiff 3Fifty is a Virginia limited liability company, with its principal place of business at 518 Montvale Avenue, Richmond, Virginia 23222, and is a party to a Franchise Agreement with Defendant HFA dated April 20, 2024. Catherine K. Buckenmaier is the sole member of 3Fifty, and is domiciled in, and maintains a true, fixed, and permanent home in Virginia. She is neither domiciled in nor a citizen of Texas.

17.    Plaintiff Wolf Moon is a Colorado corporation, with its principal place of business at 3641 Vestal Loop Boulevard, Broomfield, Colorado 80025, and is a party to a Franchise Agreement with Defendant HFA dated February 24, 2023.

18.     Plaintiff Lava is a Missouri limited liability company, with its principal place of business at 1286 State Route DD, Willow Springs, Missouri 65793, and is a party to a Franchise Agreement with Defendant HFA dated April 29, 2023.  David Rodgers and Brett Rodgers are the only members of Lava.  Brett Rodgers is domiciled in, and maintains a true, fixed, and permanent home in Missouri.  David Rodgers is domiciled in, and maintains a true, fixed, and permanent home in Colorado.  Neither member is domiciled in nor a citizen of Texas.

19.     Plaintiff FoxKnox is an Arizona corporation, with its principal place of business at 26720 North 10th Lane, Phoenix, Arizona 85085, and is a party to a Franchise Agreement with Defendant HFA dated April 30, 2023.

20.     Plaintiff Patel is an individual domiciled in Illinois, maintains a true, fixed, and permanent home at 396 Echo Lane, Unit 3, Aurora, Illinois 60504, and is a party to a Franchise Agreement with Defendant HFA dated on or about January 18, 2024.

21.     Plaintiff ESK is a South Carolina limited liability company, with its principal place of business at 20 Hatton Place, Suite 230, Hilton Head Island, SC 29926, and is a party to a Franchise Agreement with Defendant HFA dated November 17, 2023.  Robert E. Moore Jr. and Laura Moore are the only members of ESK, and each is domiciled in, and maintains a true, fixed, and permanent home in South Carolina.  Neither member is domiciled in nor a citizen of Texas.

DEFENDANTS

22.     Defendant Franchisor HFA is a Texas limited liability company organized and existing under the laws of the State of Texas, with its principal place of business at 500 West Main Street, Waxahachie, Texas 75165.  Maya Ratcliff is the sole member of HFA, and is domiciled in, and maintains a true, fixed, and permanent home in Texas at 438 Johnson Lane, Ovilla, Texas 75154.

23.     Defendant Strong is a Texas limited liability company, with its principal place of business at 500 West Main Street, Waxahachie, Texas 75165.  Defendant Ratcliff is the sole member of Strong.  She is domiciled in, and maintains a true, fixed, and permanent home in Texas at 438 Johnson Lane, Ovilla, Texas 75154.

24.     Defendant HFAU is a Texas limited liability company, with its principal place of business at 500 West Main Street, Waxahachie, Texas 75165.  Defendant Ratcliff is the sole member of HFAU.  She is domiciled in, and maintains a true, fixed, and permanent home in Texas at 438 Johnson Lane, Ovilla, Texas 75154.

25.     Defendant HFA Supply is a Texas limited liability company, with its principal place of business at 500 West Main Street, Waxahachie, Texas 75165.  Defendant Ratcliff is the sole member of HFA Supply.  She is domiciled in, and maintains a true, fixed, and permanent home in Texas at 438 Johnson Lane, Ovilla, Texas 75154.

26.     Defendant HFAP is a Texas limited liability company, with its principal place of business at 500 West Main Street, Waxahachie, Texas 75165.  Defendant Ratcliff is the sole member of HFAP.  She is domiciled in, and maintains a true, fixed, and permanent home in Texas at 438 Johnson Lane, Ovilla, Texas 75154.

27.     Defendant HFA Spark is a Texas limited liability company, with its principal place of business at 500 West Main Street, Waxahachie, Texas 75165.  Defendant Ratcliff is the sole member of HFA Spark.  She is domiciled in, and maintains a true, fixed, and permanent home in Texas at 438 Johnson Lane, Ovilla, Texas 75154.

28.     Defendant HFA Tech is a Texas limited liability company, with its principal place of business at 500 West Main Street, Waxahachie, Texas 75165.  Defendant Ratcliff is the sole member of HFA Tech.  She is domiciled in, and maintains a true, fixed, and permanent home in Texas at 438 Johnson Lane, Ovilla, Texas 75154.

29.    Defendant HFAM is a Texas limited liability company, with its principal place of business at 500 West Main Street, Waxahachie, Texas 75165.  Defendant Ratcliff is the sole member of HFAM.  She is domiciled in, and maintains a true, fixed, and permanent home in Texas at 438 Johnson Lane, Ovilla, Texas 75154.

30.    Defendant MT is a Texas limited liability company, with its principal place of business at 500 West Main Street, Waxahachie, Texas 75165.  Defendant Ratcliff is the sole member of MT.  She is domiciled in, and maintains a true, fixed, and permanent home in Texas at 438 Johnson Lane, Ovilla, Texas 75154.

31.    Defendant Ratcliff is an individual domiciled in Texas, and maintains a true, fixed, and permanent home at 438 Johnson Lane, Ovilla, Texas 75154.  She is the sole member of Defendants HFA, Strong, HFAU, HFA Supply, HFAP, HFA Tech, HFA Spark, HFAM, and MT. Defendants HFA, Strong, HFAU, HFA Supply, HFAP, HFA Tech, HFA Spark, HFAM, and MT are all merely alter-egos of Defendant Ratcliff, who is their sole Member, and each of these Defendants are mere instrumentalities of Ratcliff.

32.    Defendant Kirk is an individual domiciled in Texas, and maintains a true, fixed, and permanent home at 1321 Greenrock Court, Midlothian, Texas 76065.

33.    Defendant Kirk is the former Brand President of Defendant HFA and, upon information and belief, was an employee, agent and representative of Defendants Strong, HFAU, HFA Supply, HFAP, HFA Tech, HFA Spark, HFAM, and MT.

<u>JURISDICTION AND VENUE</u>

34.    The matter in controversy exceeds $75,000 and the Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332.  At the time of this action's filing, the citizenship of each member of all Plaintiffs was diverse from that of each member of all Defendants.  All of the Defendants are Texas entities and all members of those entities, being solely Defendant Ratcliff,

is a citizen of Texas. None of the Plaintiffs are Texas entities, and no member nor shareholder of any Plaintiff entity is a citizen of Texas.

35.     Also, each Plaintiff is a party, as franchisee, to franchise agreements with Defendant Franchisor HFA, as Franchisor, and those subject Franchise Agreement(s) prescribe that controversies between the parties must be brought exclusively in the state or federal court of general jurisdiction located in Ovilla, Texas. *See* Franchise Agreement(s), §16.2.[1]

36.     Venue is appropriate in this Court pursuant to 28 U.S.C. §1391(b)(2) and pursuant to the aforesaid provision of §16.2 of the subject Franchise Agreements.

FACTUAL BACKGROUND

*The FTC Franchise Rule (as Amended) (16 C.F.R. §§ 436 and 437) ("Franchise Rule")-*
*Item 19 Financial Performance Representations ("FPR")*

37.     The FTC Franchise Rule was enacted and intended to give prospective purchasers of franchises the material information they need in order to weigh the risks and benefits of such an investment.

38.     The furnishing to a prospective franchisee of misleading, unfair, and/or deceptive documents, and the making of related, misleading oral statements, is not only a violation of the Franchise Rule but also subjects franchisor defendants to significant liability under the applicable state and common law (e.g., fraudulent inducement, misrepresentation and negligent misrepresentation).

39.     The Franchise Rule requires a franchisor to affirmatively disclose twenty-three (23) different "topics" of information about the offered franchise, its officers, and other franchisees, with each topic known as an "Item" in a Franchise Disclosure Document ("FDD"). Under

---

[1] The "Franchise Agreements" are previously described and exemplars of which for the years 2022 and 2023 are attached as **Exhibit A** and **Exhibit B**, respectively, and all contain substantially similar language to that which is found in Section 16.2 titled "Forum for Litigation".

applicable law, a franchisor must ensure that its FDD is materially accurate, current, and complete when furnished to a prospective franchisee.

40.     16 C.F.R. § 436.6 provides the following at subpart (a):

> It is an unfair or deceptive act or practice in violation of Section 5 of the FTC Act for any franchisor to fail to include the information and follow the instructions for preparing disclosure documents set forth in subpart C (basic disclosure requirements) and subpart D (updating requirements) of part 436.   The Commission will enforce this provision according to the standards of liability under Sections 5, 13(b), and 19 of the FTC Act.

41.     A prospective franchisee must have a fair and reasonable opportunity to assess the franchise opportunity, with all current, material facts and information before the prospective franchisee, before deciding to enter into a franchise relationship with a franchisor.  A franchisor's "strict compliance" with the Franchise Rule does not create a "safe harbor" from a fraud in the inducement claim brought by a franchisee against the franchisor.

42.     Under the Franchise Rule, at 16 CFR 436.5(s), a franchisor must have a reasonable basis and written substantiation for the representation at the time the representation is made and must state the representation in the Item 19 disclosure.

43.     A franchisor must also make additional specified truthful disclosures. The Franchise Rule further authorizes franchisors to provide a "supplemental financial performance representation about a particular location or variation, apart from the disclosure document."  The HFA FDD, at Item 17, and the Franchise Agreement(s), at Section 12.1, unequivocally provide that the terms and representations of the FDD are binding on the Franchisor and are integrated into the franchise agreements.

44.     In connection with Item 19, the North American Securities Administrators Association, Inc. (NASAA) guidelines expressly provide as follows:

> What Are the Common Attributes of the Outlets That Achieved the Stated Level of Performance?
>
> The implicit assumption underlying any historic performance representation is that a prospective franchisee may achieve at least the same level of performance – although, of course, there is no guarantee that this will happen. <u>Factors tending to call that implicit assumption into question must be disclosed.</u> Thus, Item 19 calls for disclosure of any characteristic of the group or subgroup on which a financial performance claim is based that might set that group apart from outlets currently being offered for sale.

(Emphasis supplied).

45.    As detailed hereinbelow, specific factors which call the implicit assumptions into question were known to the Franchisor Defendant but were unlawfully omitted, concealed and not disclosed in Item 19 of the FDD. Moreover, Franchisor did not provide any supplemental FPR to the Franchisee Plaintiffs apart from the disclosure document.

46.    Item 19 of the HFA FDD goes to great lengths to detail revenues, performance and results, yet Defendant intentionally concealed and failed to disclose material information which it knew or should have known.

47.    Upon information and belief, the revenue figures which Defendant disclosed include off-site revenues including those from an alleged "mobile unit" that was advertised as an option for the Franchisee Plaintiffs but appears to have never actually existed.

48.    Defendant also knowingly made the false representation that the "average ROI for the 3 open stores is about 238% ROI year 1."

49.    Defendant further made materially false, misleading, and understated FPRs as to expenses.

50.    Defendant's false FPRs as to revenues and expenses resulted in in a materially false, misleading, and overstated EBITDA number to the Plaintiffs.

51.     Notably, despite Defendant's representations of strong profitability at its Waikoloa store – the very location underpinning its FDD Item 19 financial performance disclosures – that store has since failed and permanently closed.  Two of Defendant HFA's other franchisor-affiliate locations – Las Vegas and Cedar Hill – also failed and ceased operations.

52.     Similarly, upon information and belief, based on the cost structure and unit economics of nearly all System franchisees and HFA's corporate affiliate locations (including Waikoloa, Las Vegas and Cedar Hill), doubt is cast upon the truth and accuracy of the financial performance information represented by Franchisor in Item 19 of the HFA FDD.

53.     Upon information and belief, Franchisor obtained benefits, lower costs, rebates and/or pecuniary benefits from mandatory vendors and suppliers which have substantially reduced Franchisor's supply costs and the costs of various other supplies, services and equipment.

54.     Defendant Franchisor HFA used the false and misleading financial information to paint a picture of success, ROI and profitability which the Plaintiffs relied upon to their detriment.

55.     In fact, a former employee of Defendant HFA who served as a fractional CEO and had access to operational and financial performance information across multiple franchise locations has specifically stated the following:

  a.  At no point did this individual see financial records or evidence that supported the financial results presented in the HFA FDDs.

  b.  The majority of franchise locations that this individual worked with were operating at a loss.

  c.  The financial numbers contained in the Item 19 disclosures were not only misrepresentative of the financial performance of HFA locations but were also intentionally misleading.

d.   The financial numbers and disclosures contained in Item 19 were never updated to reflect the reality of franchisee and corporate store performance, and the false and misleading information was consistently used as an inducement to encourage individuals to purchase franchises under false pretenses.

56.   In addition to the false and misleading Item 19 disclosures, incredibly, prior to the Plaintiff Franchisees' execution of their respective Franchise Agreements, Defendants made a series of false and misleading FPRs outside of the HFA FDD in violation of the Franchise Rule and applicable law.

57.   For example, Defendants provided detailed pro forma spreadsheet and financial performance projections prior to the execution of the Franchise Agreements.

58.   The pro forma spreadsheets and financial performance projections were false, fraudulent and misleading.

59.   In addition, Defendant HFA, Defendant Ratcliff and Defendant Kirk made repeated misrepresentations concerning the financial performance of a Hawaii Fluid Art studio outside of the FDD prior to and/or after the execution of each Plaintiff's Franchise Agreement.

60.   Similarly, Defendant HFA, Defendant Ratcliff and Defendant Kirk also falsely represented and also provided marketing materials to Plaintiffs falsely claiming that the business would generate a "Net Margin" of "70.41%" or that Plaintiffs would "double" their retirement accounts.

61.   The information, projections and numbers provided by Defendants to Plaintiffs in the pro forma spreadsheets, oral representations and marketing materials were, and are, misleading, and are wholly inconsistent with the FPRs set forth in Item 19 of the HFA FDD. The conduct by Defendant Franchisor HFA, Defendant Ratcliff and Defendant Kirk in this regard is

14

unlawful and fraudulent and constitutes improper FPRs in violation of the Franchise Rule and applicable law.

<i>Franchise Rule – HFA's Item 7 Substantial Misrepresentation and<br>Understatement of Plaintiffs' Initial Investment</i>

62.    Pursuant to the Franchise Rule, at 16 CFR 436.5(g), Franchisor HFA was at all times required in Item 7 of the HFA FDD to make detailed and truthful disclosures pertaining to the initial investment of each Plaintiff as a prospective HFA Franchisee.

63.    Here, however, Defendant HFA grossly understated the Item 7 initial investment amount for the specific intended purpose of inducing each Plaintiff to purchase a HFA franchise, and did so deliberately by using false, inaccurate and misleading numbers.

64.    Defendant HFA intentionally misled the Plaintiff Franchisees into believing that their upfront investment and working capital would be sufficient and lead to profitability.

65.    In reality, however, the truthful and accurate costs commensurate with being able to reach a break-even point were significantly higher than those falsely represented by Defendants. Defendants never provided, and refused to provide Franchisees with any guidance, strategies, or working infrastructure to help bridge that gap.

66.    Moreover, Defendants required the Plaintiff Franchisees to purchase large quantities of inventory upfront from Franchisor and Franchisor's mandatory vendors at supra-competitive prices, which served to tie up substantial capital and with no ability to return or liquidate unsold stock.

67.    Defendants mandated that each Plaintiff prepay for branded paints nearly eleven (11) months in advance, further exacerbating financial strain, and in sharp contrast to Defendants' representations to Plaintiffs regarding investment sufficiency and cash flow management.

68.    Defendants knew or should have known that the information they provided to Plaintiffs relating to initial costs and expenses was false, fraudulent, inaccurate and misleading at the time Defendants communicated same.  Nonetheless, Franchisor HFA misled the Plaintiffs into evaluating the franchise offer premised on knowingly false and misleading information relating to initial costs and expenses at the time it was communicated in the HFA FDD.

*Franchise Rule – HFA's Charging Unlawful and Undisclosed Fees, and*
*Related Vendor Issues*

69.    Pursuant to the Franchise Rule, at 16 CFR 436.5(h)(6), Franchisor HFA was at all times obligated in Item 8 of the HFA FDD to disclose "whether the franchisor or its affiliates will or may derive revenue or other material consideration from required purchases or leases by franchisees" and to "describe the precise basis by which the franchisor or its affiliates will or may derive that consideration by stating:

> (i) The franchisor's total revenue.
>
> (ii) The franchisor's revenues from all required purchases and leases of products and services.
>
> (iii) The percentage of the franchisor's total revenues that are from required purchases or leases.
>
> (iv) If the franchisor's affiliates also sell or lease products or services to franchisees, the affiliates' revenues from those sales or leases.

16 C.F.R. § 436.5(h)(6).

70.    Pursuant to the Franchise Rule, a franchisor is obligated to provide every prospective franchisee with a FDD, and related agreement, and in Item 6 detail any and all of the initial and ongoing fees that a franchisor will charge to the franchisee. The Franchise Rule expressly provides as follows:

> Item 6: Other Fees. Disclose, in the following tabular form, all other fees that the franchisee must pay to the franchisor or its affiliates, or that the franchisor or its affiliates impose or collect in whole or in part

for a third party. State the title "OTHER FEES" in capital letters using bold type. Include any formula used to compute the fees.

If fees may increase, disclose the formula that determines the increase or the maximum amount of the increase. For example, a percentage of gross sales is acceptable if the franchisor defines the term "gross sales."

16 C.F.R. § 436.5(f).

71.     Here, Defendant HFA implemented new and additional fees which were not disclosed in its FDD in violation of applicable law or the terms of the Franchise Agreements.

72.     For example, Defendant HFA charged a $500.00 fee to the Franchisees for website development, which was not disclosed in the FDD and is not authorized to be charged under the Franchise Agreements.

73.     Similarly, Defendant HFA has added a monthly recurring charge of $350 per month for a "Marketing Access Fee", which fee was also not disclosed and is not authorized by the express terms of the Franchise Agreements.  Likewise, Defendant HFA implemented a technology fee, and some Plaintiffs were charged $450 per month and others were charged $950 per month. Defendant HFA and Defendant Ratcliff failed and refused to provide any details as to how funds associated with the purported technology fees were being used.

74.     Defendant HFA has also unlawfully and wrongfully implemented and charged financial penalties and fines upon Franchisees and made threats of same at will, without any authority to do so under the Franchise Agreements or applicable law.

75.     The HFA FDD includes no such precise basis describing Defendants' receipt of consideration from suppliers and vendors, yet Defendants and their mandated vendors unfairly charge the Plaintiff Franchisees supra-competitive prices for various mandatory goods, products, services, supplies and equipment, and paid rebates and/or other consideration to Defendant HFA or other Defendants in order to be a mandated vendor to Plaintiffs and other HFA franchisees.

76.     Defendant HFA has also failed to properly vet and qualify its vendors, and has engaged vendors who are incompetent, and charge excessively for products or services when more competent and reasonably priced suppliers could have been, and should have been, utilized, forcing Plaintiffs to spend substantially more on equipment, services, software, and other items.

77.     The excessive charges by Defendant Franchisor and its mandatory vendors and suppliers for mandatory goods, products, services, supplies and equipment constitute hidden and unlawful fees in violation of the Franchise Rule and other applicable law.

78.     Defendants' receipt of rebates from vendors associated with same constitute unlawful hidden and undisclosed fees in violation of the Franchise Rule and other applicable law.

<u>*The Franchise Agreements*</u>

79.     The Franchise Agreements between Plaintiffs and Defendant HFA are substantially identical for each of the Plaintiffs.  (See Exhibit A and Exhibit B).

80.     In the Franchise Agreements, Defendant HFA made the express representation to Plaintiffs that it "will provide to you additional operational and consulting services with respect to the operation of the Studio upon your reasonable request and subject to the availability of our personnel or the personnel of any Area Representative.  We will make available to you information about new developments, techniques, and improvements in the areas of merchandising, advertising, management, operations, and Studio design.  We may provide such additional consulting services through the distribution of printed or filmed material, an intranet or other electronic forum, meetings or seminars, teleconferences, webinars, or in person."  Franchise Agreement(s), §5.6.

81.     In the Franchise Agreements, Defendant HFA made the express representation to Plaintiffs that "to the extent that we establish specifications, require approval of suppliers or service providers, or designate specific suppliers or service providers for particular items or

services, we will publish our requirements in the Manuals." Franchise Agreement(s), §6.7(a). Likewise, Defendant HFA was restricted to lawfully require Plaintiffs "to charge certain prices for goods or services" which were "set forth in the Manuals or otherwise in writing from time to time." Franchise Agreement(s), §6.6.

82.    In the Franchise Agreements which permitted Defendant HFA to establish a "Marketing Fund", said Defendant was prohibited from using "any contributions to the Marketing Fund to defray [Defendants'] general operating expenses." Franchise Agreement(s), §7.2(b). Defendants were and are required to make available to Plaintiffs without charge or at a reasonable cost any sales and other materials produced with Marketing Fund. Franchise Agreement(s), §7.2(d).

83.    The Franchise Agreements granted Defendants discretion to establish and operate websites, social media accounts, and other described means of digital advertising, defined as "Digital Marketing", but required to do so only to promote Defendants' Marks, Plaintiffs' Studios, and the entire network of Hawaii Fluid Art Studios, and were required at all times to maintain a System Website including information relating to Plaintiffs' Studios, and the ability for customers to purchase classes at the Studios and access the respective Studios' reservation systems. *See* Franchise Agreement(s), §§7.5(a)-(b). In direct contravention of this provision, Defendant HFA and Defendant Ratcliff used Plaintiffs' social media sites without Plaintiffs' permission or authorization to promote the sale of new franchisees even though Defendant HFA did not have a Franchise Disclosure Document in place.

84.    In the Recitals of the Franchise Agreements, Defendant HFA made the express representation, among others, that "the distinguishing characteristics of the System include, but are not limited to, our Studio designs, layouts, and identification (collectively, the "Trade Dress"), our specifications for equipment, inventory, and accessories; our website or series of websites for

the Studios (the "System Website"); our relationships with vendors; our software and computer programs; our online booking system; our reservation procedures; any programs and classes that we have developed or may develop; the accumulated experience reflected in our training program, operating procedures, customer service standards, methods, and marketing techniques; and the mandatory and suggested policies, procedures, standards, specifications, rules, and requirements ("System Standards") set out in our operations manuals ("Manuals") and otherwise in writing." Franchise Agreement(s), Recital B. Virtually all of these express representations were, and are, deliberate falsehoods.

85.     Defendants required Plaintiffs to acknowledge Defendants' ownership of Marks, Trade Dress, "Copyrights", "Innovations", and "Proprietary Information" and be bound by restrictions in usage of same and expressly requiring that Plaintiffs not contest Defendants' alleged legal rights in same, even to the extent that Defendants were not the actual owners of the foregoing, had no legal rights, or misrepresented said information, systems, methods or materials which, in fact, were not those of Defendants but which Defendants had copied or misappropriated from others. *See* Franchise Agreement(s), §§9.1-10.2.

86.     The Franchise Agreements expressly provide that Plaintiffs remedies are not exclusive and that "no right or remedy … is exclusive of any other right or remedy under this [Franchise] agreement or under Applicable Laws", with "each and every such remedy" being "in addition to and not in limitation of or substitution for, every other remedy available at law or in equity or by statute or otherwise." Franchise Agreement(s), §16.6.

87.     To the extent that any provision of the Franchise Agreements is inconsistent with any state statute, Defendants have acknowledged and agreed that the provisions of such state statute(s) shall apply to the Franchise Agreements to the extent of any inconsistency. *See* Franchise Agreement(s), §16.9. Accordingly, Defendants are bound by applicable law and Plaintiffs are

entitled to seek any and all available statutory remedies including, but not limited to punitive damages against Defendants, to the extent that any state statute provides for punitive damages.

88.    Defendants have agreed to reimburse Plaintiffs for all reasonably incurred attorneys' fees and expenses to enforce any terms of the Franchise Agreements, any obligation owed to any Plaintiff Franchisee, or in the defense of any claim asserted by Defendants, should Defendant(s) fail to substantially prevail in court or other formal legal proceeding. *See* Franchise Agreement(s), §16.9.

89.    The Franchise Agreements proscribe certain fees due and payable by Plaintiffs. Notwithstanding, Defendant HFA and the other affiliated Defendant entities have charged fees to Plaintiffs which are not contained in the Franchise Agreements or authorized by the terms and provisions of the Franchise Agreements.

90.    While the Franchise Agreements explicitly provide that invoices were due by the 10th day of the month, Defendant HFA improperly changed the invoice payment terms and wrongfully pulled ACH funds prior to the due date of any such invoice in express violation of the Franchise Agreement.

91.    Likewise, without authorization and in direct violation of the Franchise Agreements, Defendant HFA imposed excessive late fees and fines in the amount of $1,500 even though the Franchise Agreements do not authorize such late fees and/or fines.  Defendants HFA and Ratcliff did this as an intimidation tactic and in a retaliatory and discriminatory manner against Plaintiffs.

### *Additional Misrepresentations, Breach, and Malfeasance*

92.    Defendants have, without authorization, copied the systems, methods and materials of others and passed same off as their own.  In doing so, Defendants have claimed that HFA's methods and materials are proprietary when the purported "secret sauce" is a known medium

known as Floetrol for doing fluid art. Despite this fact, Defendants have mandated that the Plaintiff Franchisees remove all labels of the Floetrol to conceal and deceive customers of the HFA System.

93.    Defendant HFA falsely represented to Plaintiffs that the Hawaii Fluid Art System was fully formed, a proven franchise model, and had systems in place to support growth of its franchised businesses, with the intent to induce Plaintiffs' reliance on these misrepresentations.

94.    As such, Plaintiffs entered the HFA System under the false impression that they were adopting a well-established model with tested methods and support. In reality, however, Plaintiffs became Defendants' guinea pigs for an evolving and dysfunctional operation.

95.    Defendants had no essential infrastructure at the time HFA induced Plaintiffs into becoming Franchisees and Plaintiffs relied upon Franchisor's misrepresentations and concealments to enter into Franchise Agreements and remain as Hawaii Fluid Art Franchisees thereafter. Further deficiencies of Defendants have included, but are not limited to, the following:

    a.  No established Customer Relationship Management (CRM) program or marketing funnel;

    b.  No standard operating procedures or cohesive training platform;

    c.  Inconsistent supply chains and retail planning;

    d.  No inventory control system;

    e.  Rapid, unvetted rollout of new (unqualified) vendors;

    f.  Lack of transparent financial reporting tools;

    g.  Conflicting POS systems (Fare Harbor, TripWorks and Clover) with no integration or clear guidance, making accurate financial tracking and reconciliation difficult;

    h.  Accounting/invoicing issues by Franchisor and Franchisor's (seemingly) intentional provision of incorrect invoices with excessive, incorrect alleged charges to the Franchisees; and

    i.    Defendants mandated that Plaintiffs have a "Patch Party" option in their studios; however, Defendants did not have authorization to use that term as it constitutes trademarked intellectual property of a third party, which Defendants did not have authorization to use.

96.    Defendant Franchisor unlawfully concealed and did not disclose a prior bankruptcy filing of Defendant Kirk, which should have been disclosed in Item 4 and was fraudulently concealed in violation of the Franchise Rule and applicable law.

97.    Upon information and belief, Defendant Franchisor has mismanaged and misappropriated the National Brand Marketing Fund. Despite repeated requests from Plaintiffs, Franchisor has failed and refused to provide an accounting for the National Brand Marketing Fund in violation of the express terms and provisions of the Franchise Agreements.

98.    Defendant Franchisor materially misrepresented in its FDD, and other communications outside the FDD, that the Plaintiff Franchisees could achieve profitability while maintaining a marketing budget of approximately $500 per month. This was materially false and misleading, and reflected in pro forma materials and in the estimated initial investment disclosures. Subsequently, however, Defendants later told the Plaintiffs after they signed Franchise Agreements that each would need to spend at least $1,500–$2,000 per month on marketing to be viable.

99.    During the franchise offering and sales process to Plaintiffs, Defendant Franchisor misrepresented that the Hawaii Fluid Art System was an absentee business model, inducing the Plaintiffs to believe and rely on the falsehood that they could own franchised businesses with mere high-level oversight while delegating day-to-day operations. This was not true, instead requiring Plaintiffs' significant daily involvement.

100.   The resin product supplied by Defendant Franchisor to Plaintiffs contains known toxic ingredients, and its use requires careful handling, ventilation, and personal protective equipment (PPE). However, at no time during the franchise offering and sales, onboarding, training, or otherwise, did any Defendant ever discuss, notify, or warn any Plaintiff about the chemical risks associated with the resin product or other materials in their Studio(s). Defendants never discussed safety practices, nor ever provided any Plaintiff with proper safety data sheets (SDS) or protocols, or any proper and necessary training required to safely handle these materials.

101.   Franchisor materially misrepresented to Plaintiffs that the Hawaii Fluid Art franchised system was built on the Hawaiian value of "ohana" – a family-like culture of mutual support, compassion, and collaboration – which Defendant Franchisor emphasized repeatedly in its marketing materials, discovery calls, and communications with Plaintiffs to purposefully induce the Plaintiffs emotionally and philosophically to execute Franchise Agreements.

102.   However, once Plaintiffs signed Franchise Agreements, Plaintiffs communications, concerns, and grievances to Defendants were ignored or, worse yet, met with threats or retaliation. Defendants also deliberately withheld support to Plaintiffs, providing it only sporadically at best, and imposing "enforcement" of the Franchisor's policies in an arbitrary manner.  There was no "ohana" from Franchisor, but rather derisive and punitive treatment of Plaintiffs in a rigid vendor-controlled relationship. Franchisor has engaged in unlawful retaliation against Plaintiffs and other franchisees who were communicating with each other about franchisee grievances and issues. Defendant Kirk once joined a group discussion amongst certain of the franchisees and advised that such discussions were prohibited.

103.   The mandatory vendors Defendant Franchisor requires Plaintiffs to utilize have underperformed and repeatedly changed and cycled through by Franchisor, in each instance

requiring and pressuring Plaintiffs to contract with vendors at undisclosed inflated costs without any transparency, and in the absence of supporting performance data or consistent reporting.

104.    Defendant Franchisor has not properly vetted or qualified its mandatory vendors, forcing and imposing incompetence and excessive costs upon the Plaintiff Franchisees, who are forbidden from using competent and reasonably priced suppliers Franchisor should have chosen.

105.    Defendant Franchisor's marketing materials provided to Franchisees prior to signing the Franchise Agreements detail pre-opening support, post opening support and additional support, yet HFA did not provide support or guidance to Plaintiffs beyond occasional minor unproven, ineffective, and untested suggestions.

106.    Defendant Franchisor has not provided support to Plaintiffs and had ineffective marketing initiatives.  For example, Franchisor has repeatedly emailed Franchisees' customer lists promotions for days that Studio(s) are closed.  Despite the utter ineffectiveness of Defendants' so-called marketing initiatives, Franchisor has in bad faith refused to allow Plaintiffs to opt out.

107.    Defendant Franchisor's sole "marketing plan" is little more than merely joining Facebook groups, providing offers that serve to reduce Franchisee margins and to also offer discounts which cause Franchisee to lose money. Franchisor's marketing also often violates its own internal policies and is misleading to customers, and its marketing team lacks requisite experience and knowledge, and is rife with personnel turnover.

108.    Franchisor has not provided any Instagram management as promised and has failed to provide the Plaintiff Franchisees with a dedicated franchise coordinator, mandating that Franchisees pay extra fees for website improvements while completely failing to implement any promised improvements.

109.    Although Defendants' representative in charge of HFA's website has conceded having no experience in website optimization, Defendant Franchisor has consistently and

repeatedly rejected the Franchisees' requests to manage their own web pages for their respective franchised businesses.

110.    Franchisor is insolvent and unable to financially sustain its operations. Upon information and belief, several employees claimed past due payment of wages, with some reporting that their health insurance was canceled without notice, vendors and contractors have publicly complained that they have not been paid by Franchisor and Franchisor has claimed to have "lost" several months of accounting data after being asked to provide details on how franchisee-paid marketing fees were spent. Franchisor has been sued by vendors for amounts due and cannot pay its bills. All of these issues speak to substantial mismanagement of the System, and Defendants' incompetence and bad faith misconduct.

111.    Upon information and belief, Defendants have not paid payroll taxes as required by law, yet has withheld federal, Social Security, and Medicare from their employees and not remitted same to the Internal Revenue Service at any time since formation.

112.    Upon information and belief, Defendants HFA, Defendant Ratcliff and the Defendant entities have not timely and/or properly filed tax returns and/or paid payroll taxes in accordance with applicable law or any of its employees' respective state taxing authorities.

113.    Upon information and belief, Defendants further denied their employees pay stubs, and W-2s did not match actual deposits. Instead, Defendants paid employees through Venmo, CashApp, or cash, without any legally required payroll records.

114.    Upon information and belief, Defendants deliberately deleted or destroyed payroll files and books and records to intentionally conceal same from federal and state authorities and Defendant HFA's audited financials and falsely blamed an ex-employee for these acts.

115.    Upon information and belief, Defendants routinely did not pay vendors and consultants yet either misrepresented this fact to Plaintiffs or concealed same from Plaintiffs.

116. Defendants repeatedly made unauthorized and erroneous ACH draws from Plaintiff Franchisees' accounts and then refused to refund any sums to Plaintiffs.

117. Despite an explicit prohibition against doing so in the Franchise Agreements, Defendants repeatedly and deliberately took Plaintiffs' contributions for marketing and technology to cover or defray Defendants' expenses and did not use those contributions by Plaintiffs for the prescribed purposes.

118. Defendant Ratcliff, on behalf of herself or other Defendants, used Plaintiffs' contractual contributions and funds for personal expenses, spending, and extravagances including lavish travel. Ratcliff engaged in transfers among various entities under her exclusive control as the sole Member to conceal her illegal and wrongful conduct.

119. As discussed herein, Defendants have willfully engaged in tax fraud and evasion, commingling of accounts, conversion and misuse of Plaintiff Franchisees' funds, the destruction of books and records, and deliberate attempts to conceal and misrepresent same.

120. In addition to retaliatory measures which Defendants have taken against Plaintiffs and as set forth herein, Defendant Ratcliff, on behalf of herself, HFA and other Defendants, took retaliatory measures against employees who sought to raise concerns about these matters, including the withholding of wages and termination of employment.

*Franchisor's Retaliatory and Discriminatory Misconduct and Other Misconduct and Non-Compliance with the Terms and Provisions of the Franchise Agreements*

121. Franchisor HFA has frequently targeted Franchisees who have expressed issues or grievances, threatening and issuing default and termination notices in an arbitrary, discriminatory and retaliatory manner based on the franchisees' lawful association with each other concerning the franchised business, and done so illegally or without basis or authority to do so in the Franchise Agreements.

122.     In retaliation against Plaintiff DPC, for example, Franchisor sent this Plaintiff a purported non-compliance fee in the amount of $1,500 without legal basis or justification, and also an "audit" request seeking the personal financial statements of one of its principals solely to harass, intimidate, silence, and threaten this Franchisee Plaintiff.

123.     The Franchise Agreements require that "prior to filing any proceeding to resolve any dispute based upon, arising out of, or in any way connected with this Agreement, a party must submit the dispute for mediation."  "The mediation shall be held not later than 14 days after a written request for mediation shall have been served on the other parties." *See* Franchise Agreements, §16.1.

124.     In good faith compliance with the Franchise Agreements, on June 19, 2025 Plaintiffs served a demand for mediation upon Defendants ("Mediation Demand").

125.     Defendants emailed Plaintiffs on June 24, 2025, stating only that they would "be reviewing [the Mediation Demand] shortly."

126.     On June 30, 2025, Plaintiffs emphasized that time was of the essence and that the Franchise Agreements required mediation within 14 days, or by July 3, 2025.

127.     After no response from Defendants or good faith indication of mediating in the time and manner required by the Franchise Agreements, on July 3, 2025 and again on July 7, 2025, Plaintiff Franchisees again sought Defendants good faith cooperation, response, and participation in mediation, to no avail.

128.     On July 9, 2025, Defendant HFA sent a letter to Plaintiff Franchisees with responses and threats to some of the matters raised in the Mediation Demand, yet without any indication of willingness to cooperate or participate in mediation as required by the Franchise Agreements on a date certain, or any date(s).

129.    It was not until July 23, 2025, now over 30 days after the Mediation Demand, that Defendant Franchisor provided any response regarding the required mediation, stating only that they were "available for mediation on September 3, 2025", more than 60 days after the Mediation Demand, prompting Plaintiffs' response that a proposed mediation in excess of 75 days following the Demand was unacceptable, and in significant violation of the Franchise Agreements. Defendants waited nearly another week before in bad faith reiterating that they were only willing to mediate on September 3, 2025.

130.    On July 30, 2025, Defendants suggested a remote mediation for August 25, 2025 and Plaintiffs agreed, only for the Franchisor to then cancel the following day and advise that they would only be available on September 24, 2025, a date now over 90 days after the Mediation Demand.

131.    By September 3, 2025, Defendants suggested availability for mediation on either September 29, 2025 or October 13, 2025, continuing their bad faith delay and gamesmanship by continuing not to mediate in good faith within 14 days of the Mediation Demand, which would have been on or before July 3, 2025.

132.    Counsel for Plaintiffs has repeatedly followed up to select a mediator for the September 29, 2025 and proposed two possible mediators. The follow up communications concerning mediation were all ignored by Defendants' counsel.

133.    On September 29, 2025, at 10:00 a.m. ET – the time of the scheduled mediation, counsel for Plaintiffs called Carlos Mouwad, counsel for Defendants, to proceed with the mediation. Counsel for Defendants advised that they were not prepared to proceed with mediation and no mediator had previously been selected – which failure to select a mediator was solely due to Defendants' lack of communication and engagement in this regard. Since June, Defendants have been using the purported mediation as a delay tactic and have failed and refused to comply

with the express mediation provisions set forth in the Franchise Agreements. Consequently, Defendant HFA has waived the mediation condition set forth in the Franchise Agreements.

134.    Moreover, even though Defendants have failed and refused to communicate and proceed with mediation in a timely manner and have been engaging in bad faith delay tactics, Defendant Franchisor instead started sending retaliatory notices of alleged default and/or termination to Plaintiffs in bad faith and for purposes of intimidation, without providing proper notice as required by the Franchise Agreements, premised on pretext and falsehoods, and not within any of Franchisor's contractual or other legal authority including, but not limited to, the following:

    a.   August 29, 2025 notice of default to Plaintiff Ohana;

    b.   September 8, 2025 Notice of Termination to Plaintiff DGE;

    c.   September 8, 2025 Notice of Termination to Plaintiff Boltimo;

    d.   September 19, 2025 Notice of Termination to Plaintiff DGE;

    e.   September 19, 2025 Notice of Suspension of franchise System access to Plaintiff DPC;

    f.   September 19, 2025 Notice of Suspension of franchise System access to Plaintiff Fun Art;

    g.   September 19, 2025 Notice of Suspension of franchise System access to Plaintiff HFA Gulf Coast;

    h.   September 19, 2025 Notice of Suspension of franchise System access to Plaintiff ESK; and

    i.   September 19, 2025 Notice of Suspension of franchise System access to Plaintiff Patel.

135.    Defendant HFA has sent these notices in a discriminatory and retaliatory manner and has not similarly sent notices to other franchisees in the system who have not engaged counsel or threatened to hold Defendants accountable for the blatant fraud, malfeasance, breach of contract and unlawful conduct engaged in by Defendants.

<u>COUNT I – COMMON LAW FRAUD</u>

<u>DGE AGAINST DEFENDANT HFA, DEFENDANT RATCLIFF AND DEFENDANT KIRK</u>

136.    Plaintiff DGE repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

137.    Prior to Plaintiff DGE entering into the Franchise Agreement, Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, made materially false representations to said Plaintiff including, but not limited to, those fully articulated herein, and specifically including those set forth in paragraphs 45-61, 63-68, 71-78 and 92-101 above. Prior to the aforesaid Plaintiff entering into the Franchise Agreement, Defendant Kirk also made materially false representations to said Plaintiff as set forth above.

138.    Defendants Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, knew that these representations were false at all times, including at the time the statements were made.

139.    Prior to Plaintiff DGE entering into the Franchise Agreement, Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, also concealed material facts from said Plaintiff, including said Plaintiff's principals, including said Plaintiff's principals, which were vital to making an informed decision whether to enter into the Franchise Agreement, and undertake the significant time and expense associated with same including, but not limited to, those fully articulated herein.

140.    Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, knew that the facts concealed from Plaintiff DGE were material and that had Defendants truthfully disclosed same, Plaintiff would have been able to make an informed decision whether to enter into the Franchise Agreement, and undertake the significant time and expense associated with same, yet Defendants deprived Plaintiff of this ability by deliberate concealment.

141.    Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, knowingly made the false misrepresentations to Plaintiff DGE and knowingly concealed material facts from said Plaintiff, including said Plaintiff's principals, with the intent to induce Plaintiff to rely upon the misrepresentations and lack of knowledge regarding concealed facts, and act upon same and enter into the Franchise Agreement.

142.    Plaintiff DGE did in fact rely upon and was in fact induced by Defendants' false representations and concealed material facts and did then enter into the Franchise Agreement.

143.    Subsequent to execution of the Franchise Agreement, Defendant Ratcliff and Defendant Kirk (and other authorized representatives of the Defendant HFA), on behalf of themselves and Defendant Franchisor, continued to knowingly make false misrepresentations to Plaintiff DGE and knowingly concealed material facts from said Plaintiff, including said Plaintiff's principals, including said Plaintiff's principals, with the intent to induce Plaintiff to rely upon the misrepresentations and lack of knowledge regarding concealed facts, and act upon same to commence construction, development, and operation of the Hawaii Fluid Art Studio and franchised business, and to refrain from the termination and/or transfer of same to avoid or mitigate sustaining further damages and losses.

144.    Plaintiff DGE did in fact rely upon and was in fact induced by Defendants' false representations and concealed material facts, and, subsequent to execution of the Franchise Agreement, acted upon same to commence construction, development, and operation of the Hawaii

Fluid Art Studio and franchised business, and to refrain from the termination and/or transfer of same to avoid or mitigate sustaining further damages and losses.

145.    Plaintiff DGE has suffered damages as a result of its reliance upon the deliberately false representations and concealment of material facts by Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, in an amount to be determined at trial.

<u>COUNT II – COMMON LAW FRAUD</u>

<u>FUN ART AGAINST DEFENDANTS HFA, RATCLIFF, AND KIRK</u>

146.    Plaintiff Fun Art repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

147.    Prior to Plaintiff Fun Art entering into the Franchise Agreement, Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, made materially false representations to said Plaintiff including, but not limited to, those fully articulated herein, and specifically including those set forth in paragraphs 45-61, 63-68, 71-78 and 92-101 above.  Prior to the aforesaid Plaintiff entering into the Franchise Agreement, Defendant Kirk also made materially false representations to said Plaintiff as set forth above.

148.    Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, knew that these representations were false at all times, including at the time the statements were made.

149.    Prior to Plaintiff Fun Art entering into the Franchise Agreement, Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, also concealed material facts from said Plaintiff, including said Plaintiff's principals, including said Plaintiff's principals, which were vital to making an informed decision whether to enter into the Franchise Agreement, and undertake the significant time and expense associated with same including, but not limited to, those fully articulated herein.

150.    Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, knew that the facts concealed from Plaintiff Fun Art were material and that had Defendants truthfully disclosed same, Plaintiff would have been able to make an informed decision whether to enter into the Franchise Agreement, and undertake the significant time and expense associated with same, yet Defendants deprived Plaintiff of this ability by deliberate concealment.

151.    Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, knowingly made the false misrepresentations to Plaintiff Fun Art and knowingly concealed material facts from said Plaintiff, including said Plaintiff's principals, with the intent to induce Plaintiff to rely upon the misrepresentations and lack of knowledge regarding concealed facts, and act upon same and enter into the Franchise Agreement.

152.    Plaintiff Fun Art did in fact rely upon and was in fact induced by Defendants' false representations and concealed material facts and did then enter into the Franchise Agreement.

153.    Subsequent to execution of the Franchise Agreement, Defendant Ratcliff and Defendant Kirk (and other authorized representatives of the Defendant HFA), on behalf of themselves and Defendant Franchisor, continued to knowingly make false misrepresentations to Plaintiff Fun Art and knowingly concealed material facts from said Plaintiff, including said Plaintiff's principals, including said Plaintiff's principals, with the intent to induce Plaintiff to rely upon the misrepresentations and lack of knowledge regarding concealed facts, and act upon same to commence construction, development, and operation of the Hawaii Fluid Art Studio and franchised business, and to refrain from the termination and/or transfer of same to avoid or mitigate sustaining further damages and losses.

154.    Plaintiff Fun Art did in fact rely upon and was in fact induced by Defendants' false representations and concealed material facts, and, subsequent to execution of the Franchise Agreement, acted upon same to commence construction, development, and operation of the Hawaii

Fluid Art Studio and franchised business, and to refrain from the termination and/or transfer of same to avoid or mitigate sustaining further damages and losses.

155.    Plaintiff Fun Art has suffered damages as a result of its reliance upon the deliberately false representations and concealment of material facts by Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, in an amount to be determined at trial.

COUNT III – COMMON LAW FRAUD

KKRK AGAINST DEFENDANTS HFA AND RATCLIFF

156.    Plaintiff KKRK repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

157.    Prior to Plaintiff KKRK entering into the Franchise Agreement, Defendant Ratcliff, on behalf of herself and Defendant Franchisor, made materially false representations to said Plaintiff including, but not limited to, those fully articulated herein, and specifically including those set forth in paragraphs 45-61, 63-68, 71-78 and 92-101 above.

158.    Defendant Ratcliff, on behalf of herself and Defendant Franchisor, knew that these representations were false at all times, including at the time the statements were made.

159.    Prior to Plaintiff KKRK entering into the Franchise Agreement, Defendant Ratcliff, on behalf of herself and Defendant Franchisor, also concealed material facts from said Plaintiff, including said Plaintiff's principals, which were vital to making an informed decision whether to enter into the Franchise Agreement, and undertake the significant time and expense associated with same including, but not limited to, those fully articulated herein.

160.    Defendant Ratcliff, on behalf of herself and Defendant Franchisor, knew that the facts concealed from Plaintiff KKRK were material and that had Defendants truthfully disclosed same, Plaintiff would have been able to make an informed decision whether to enter into the

35

Franchise Agreement, and undertake the significant time and expense associated with same, yet Defendant deprived Plaintiff of this ability by deliberate concealment.

161.    Defendant Ratcliff, on behalf of herself and Defendant Franchisor, knowingly made the false misrepresentations to Plaintiff KKRK and knowingly concealed material facts from said Plaintiff, including said Plaintiff's principals, with the intent to induce Plaintiff to rely upon the misrepresentations and lack of knowledge regarding concealed facts, and act upon same and enter into the Franchise Agreement.

162.    Plaintiff KKRK did in fact rely upon and was in fact induced by Defendants' false representations and concealed material facts and did then enter into the Franchise Agreement.

163.    Subsequent to execution of the Franchise Agreement, Defendant Ratcliff, on behalf of herself and Defendant Franchisor, continued to knowingly make false misrepresentations to Plaintiff KKRK and knowingly concealed material facts from said Plaintiff, including said Plaintiff's principals, with the intent to induce Plaintiff to rely upon the misrepresentations and lack of knowledge regarding concealed facts, and act upon same to commence construction, development, and operation of the Hawaii Fluid Art Studio and franchised business, and to refrain from the termination and/or transfer of same to avoid or mitigate sustaining further damages and losses.

164.    Plaintiff KKRK did in fact rely upon and was in fact induced by Defendants' false representations and concealed material facts, and, subsequent to execution of the Franchise Agreement, acted upon same to commence construction, development, and operation of the Hawaii Fluid Art Studio and franchised business, and to refrain from the termination and/or transfer of same to avoid or mitigate sustaining further damages and losses.

165.    Plaintiff KKRK has suffered damages as a result of its reliance upon the deliberately false representations and concealment of material facts by Defendant Ratcliff, on behalf of herself and Defendant Franchisor, in an amount to be determined at trial.

<u>COUNT IV – COMMON LAW FRAUD</u>

<u>VICE ART AGAINST DEFENDANTS HFA, RATCLIFF AND KIRK</u>

166.    Plaintiff Vice Art repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

167.    Prior to Plaintiff Vice Art entering into the Franchise Agreement, Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, made materially false representations to said Plaintiff including, but not limited to, those fully articulated herein, and specifically including those set forth in paragraphs 45-61, 63-68, 71-78 and 92-101 above. Prior to the aforesaid Plaintiff entering into the Franchise Agreement, Defendant Kirk also made materially false representations to said Plaintiff as set forth above.

168.    Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, knew that these representations were false at all times, including at the time the statements were made.

169.    Prior to Plaintiff Vice Art entering into the Franchise Agreement, Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, also concealed material facts from said Plaintiff, including said Plaintiff's principals, which were vital to making an informed decision whether to enter into the Franchise Agreement, and undertake the significant time and expense associated with same including, but not limited to, those fully articulated herein.

170.    Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, knew that the facts concealed from Plaintiff Vice Art were material and that had Defendants truthfully disclosed same, Plaintiff would have been able to make an informed decision

whether to enter into the Franchise Agreement, and undertake the significant time and expense associated with same, yet Defendants deprived Plaintiff of this ability by deliberate concealment.

171.    Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, knowingly made the false misrepresentations to Plaintiff Vice Art and knowingly concealed material facts from said Plaintiff, including said Plaintiff's principals, with the intent to induce Plaintiff to rely upon the misrepresentations and lack of knowledge regarding concealed facts, and act upon same and enter into the Franchise Agreement.

172.    Plaintiff Vice Art did in fact rely upon and was in fact induced by Defendants' false representations and concealed material facts and did then enter into the Franchise Agreement.

173.    Subsequent to execution of the Franchise Agreement, Defendant Ratcliff and Defendant Kirk (and other authorized representatives of the Defendant HFA), on behalf of themselves and Defendant Franchisor, continued to knowingly make false misrepresentations to Plaintiff Vice Art and knowingly concealed material facts from said Plaintiff, including said Plaintiff's principals, with the intent to induce Plaintiff to rely upon the misrepresentations and lack of knowledge regarding concealed facts, and act upon same to commence construction, development, and operation of the Hawaii Fluid Art Studio and franchised business, and to refrain from the termination and/or transfer of same to avoid or mitigate sustaining further damages and losses.

174.    Plaintiff Vice Art did in fact rely upon and was in fact induced by Defendants' false representations and concealed material facts, and, subsequent to execution of the Franchise Agreement, acted upon same to commence construction, development, and operation of the Hawaii Fluid Art Studio and franchised business, and to refrain from the termination and/or transfer of same to avoid or mitigate sustaining further damages and losses.

175.     Plaintiff Vice Art has suffered damages as a result of its reliance upon the deliberately false representations and concealment of material facts by Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, in an amount to be determined at trial.

## COUNT V – COMMON LAW FRAUD

### HFA GULF COAST AGAINST DEFENDANTS HFA, RATCLIFF AND KIRK

176.     Plaintiff HFA Gulf Coast repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

177.     Prior to Plaintiff HFA Gulf Coast entering into the Franchise Agreement, Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, made materially false representations to said Plaintiff including, but not limited to, those fully articulated herein, and specifically including those set forth in paragraphs 45-61, 63-68, 71-78 and 92-101 above.  Prior to the aforesaid Plaintiff entering into the Franchise Agreement, Defendant Kirk also made materially false representations to said Plaintiff as set forth above.

178.     Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, knew that these representations were false at all times, including at the time the statements were made.

179.     Prior to Plaintiff HFA Gulf Coast entering into the Franchise Agreement, Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, also concealed material facts from said Plaintiff, including said Plaintiff's principals, which were vital to making an informed decision whether to enter into the Franchise Agreement, and undertake the significant time and expense associated with same including, but not limited to, those fully articulated herein.

180.    Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, knew that the facts concealed from Plaintiff HFA Gulf Coast were material and that had Defendants truthfully disclosed same, Plaintiff would have been able to make an informed decision whether to enter into the Franchise Agreement, and undertake the significant time and expense associated with same, yet Defendants deprived Plaintiff of this ability by deliberate concealment.

181.    Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, knowingly made the false misrepresentations to Plaintiff HFA Gulf Coast and knowingly concealed material facts from said Plaintiff, including said Plaintiff's principals, with the intent to induce Plaintiff to rely upon the misrepresentations and lack of knowledge regarding concealed facts, and act upon same and enter into the Franchise Agreement.

182.    Plaintiff HFA Gulf Coast did in fact rely upon and was in fact induced by Defendants' false representations and concealed material facts and did then enter into the Franchise Agreement.

183.    Subsequent to execution of the Franchise Agreement, Defendant Ratcliff and Defendant Kirk (and other authorized representatives of the Defendant HFA), on behalf of themselves and Defendant Franchisor, continued to knowingly make false misrepresentations to Plaintiff HFA Gulf Coast and knowingly concealed material facts from said Plaintiff, including said Plaintiff's principals, with the intent to induce Plaintiff to rely upon the misrepresentations and lack of knowledge regarding concealed facts, and act upon same to commence construction, development, and operation of the Hawaii Fluid Art Studio and franchised business, and to refrain from the termination and/or transfer of same to avoid or mitigate sustaining further damages and losses.

184.    Plaintiff HFA Gulf Coast did in fact rely upon and was in fact induced by Defendants' false representations and concealed material facts, and, subsequent to execution of the Franchise Agreement, acted upon same to commence construction, development, and operation of the Hawaii Fluid Art Studio and franchised business, and to refrain from the termination and/or transfer of same to avoid or mitigate sustaining further damages and losses.

185.    Plaintiff HFA Gulf Coast has suffered damages as a result of its reliance upon the deliberately false representations and concealment of material facts by Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, in an amount to be determined at trial.

## COUNT VI – COMMON LAW FRAUD

## BOLTIMO AGAINST DEFENDANTS HFA, RATCLIFF AND KIRK

186.    Plaintiff Boltimo repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

187.    Prior to Plaintiff Boltimo entering into the Franchise Agreement, Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, made materially false representations to said Plaintiff including, but not limited to, those fully articulated herein, and specifically including those set forth in paragraphs 45-61, 63-68, 71-78 and 92-101 above. Prior to the aforesaid Plaintiff entering into the Franchise Agreement, Defendant Kirk also made materially false representations to said Plaintiff as set forth above.

188.    Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, knew that these representations were false at all times, including at the time the statements were made.

189.    Prior to Plaintiff Boltimo entering into the Franchise Agreement, Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, also concealed

material facts from said Plaintiff, including said Plaintiff's principals, which were vital to making an informed decision whether to enter into the Franchise Agreement, and undertake the significant time and expense associated with same including, but not limited to, those fully articulated herein.

190.    Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, knew that the facts concealed from Plaintiff Boltimo were material and that had Defendants truthfully disclosed same, Plaintiff would have been able to make an informed decision whether to enter into the Franchise Agreement, and undertake the significant time and expense associated with same, yet Defendants deprived Plaintiff of this ability by deliberate concealment.

191.    Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, knowingly made the false misrepresentations to Plaintiff Boltimo and knowingly concealed material facts from said Plaintiff, including said Plaintiff's principals, with the intent to induce Plaintiff to rely upon the misrepresentations and lack of knowledge regarding concealed facts, and act upon same and enter into the Franchise Agreement.

192.    Plaintiff Boltimo did in fact rely upon and was in fact induced by Defendants' false representations and concealed material facts and did then enter into the Franchise Agreement.

193.    Subsequent to execution of the Franchise Agreement, Defendant Ratcliff and Defendant Kirk (and other authorized representatives of the Defendant HFA), on behalf of themselves and Defendant Franchisor, continued to knowingly make false misrepresentations to Plaintiff Boltimo and knowingly concealed material facts from said Plaintiff, including said Plaintiff's principals, with the intent to induce Plaintiff to rely upon the misrepresentations and lack of knowledge regarding concealed facts, and act upon same to commence construction, development, and operation of the Hawaii Fluid Art Studio and franchised business, and to refrain from the termination and/or transfer of same to avoid or mitigate sustaining further damages and losses.

194.    Plaintiff Boltimo did in fact rely upon and was in fact induced by Defendants' false representations and concealed material facts, and, subsequent to execution of the Franchise Agreement, acted upon same to commence construction, development, and operation of the Hawaii Fluid Art Studio and franchised business, and to refrain from the termination and/or transfer of same to avoid or mitigate sustaining further damages and losses.

195.    Plaintiff Boltimo has suffered damages as a result of its reliance upon the deliberately false representations and concealment of material facts by Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, in an amount to be determined at trial.

<u>COUNT VII – COMMON LAW FRAUD</u>

<u>DPC AGAINST DEFENDANTS HFA, RATCLIFF AND KIRK</u>

196.    Plaintiff DPC repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

197.    Prior to Plaintiff DPC entering into the Franchise Agreement, Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, made materially false representations to said Plaintiff including, but not limited to, those fully articulated herein, and specifically including those set forth in paragraphs 45-61, 63-68, 71-78 and 92-101 above.  Prior to the aforesaid Plaintiff entering into the Franchise Agreement, Defendant Kirk also made materially false representations to said Plaintiff as set forth above.

198.    Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, knew that these representations were false at all times, including at the time the statements were made.

199.    Prior to Plaintiff DPC entering into the Franchise Agreement, Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, also concealed material

facts from said Plaintiff, including said Plaintiff's principals, which were vital to making an informed decision whether to enter into the Franchise Agreement, and undertake the significant time and expense associated with same including, but not limited to, those fully articulated herein.

200.    Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, knew that the facts concealed from Plaintiff DPC were material and that had Defendants truthfully disclosed same, Plaintiff would have been able to make an informed decision whether to enter into the Franchise Agreement, and undertake the significant time and expense associated with same, yet Defendants deprived Plaintiff of this ability by deliberate concealment.

201.    Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, knowingly made the false misrepresentations to Plaintiff DPC and knowingly concealed material facts from said Plaintiff, including said Plaintiff's principals, with the intent to induce Plaintiff to rely upon the misrepresentations and lack of knowledge regarding concealed facts, and act upon same and enter into the Franchise Agreement.

202.    Plaintiff DPC did in fact rely upon and was in fact induced by Defendants' false representations and concealed material facts and did then enter into the Franchise Agreement.

203.    Subsequent to execution of the Franchise Agreement, Defendant Ratcliff and Defendant Kirk (and other authorized representatives of Defendant HFA), on behalf of themselves and Defendant Franchisor, continued to knowingly make false misrepresentations to Plaintiff DPC and knowingly concealed material facts from said Plaintiff, including said Plaintiff's principals, with the intent to induce Plaintiff to rely upon the misrepresentations and lack of knowledge regarding concealed facts, and act upon same to commence construction, development, and operation of the Hawaii Fluid Art Studio and franchised business, and to refrain from the termination and/or transfer of same to avoid or mitigate sustaining further damages and losses.

204.    Plaintiff DPC did in fact rely upon and was in fact induced by Defendants' false representations and concealed material facts, and, subsequent to execution of the Franchise Agreement, acted upon same to commence construction, development, and operation of the Hawaii Fluid Art Studio and franchised business, and to refrain from the termination and/or transfer of same to avoid or mitigate sustaining further damages and losses.

205.    Plaintiff DPC has suffered damages as a result of its reliance upon the deliberately false representations and concealment of material facts by Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, in an amount to be determined at trial.

## COUNT VIII – COMMON LAW FRAUD

## HALEIWA AGAINST DEFENDANTS HFA, RATCLIFF AND KIRK

206.    Plaintiff Haleiwa repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

207.    Prior to Plaintiff Haleiwa entering into the Franchise Agreement, Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, made materially false representations to said Plaintiff including, but not limited to, those fully articulated herein, and specifically including those set forth in paragraphs 45-61, 63-68, 71-78 and 92-101 above. Prior to the aforesaid Plaintiff entering into the Franchise Agreement, Defendant Kirk also made materially false representations to said Plaintiff as set forth above.

208.    Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, knew that these representations were false at all times, including at the time the statements were made.

209.    Prior to Plaintiff Haleiwa entering into the Franchise Agreement, Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, also concealed material facts from said Plaintiff, including said Plaintiff's principals, which were vital to making

an informed decision whether to enter into the Franchise Agreement, and undertake the significant time and expense associated with same including, but not limited to, those fully articulated herein.

210.    Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, knew that the facts concealed from Plaintiff Haleiwa were material and that had Defendants truthfully disclosed same, Plaintiff would have been able to make an informed decision whether to enter into the Franchise Agreement, and undertake the significant time and expense associated with same, yet Defendants deprived Plaintiff of this ability by deliberate concealment.

211.    Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, knowingly made the false misrepresentations to Plaintiff Haleiwa and knowingly concealed material facts from said Plaintiff, including said Plaintiff's principals, with the intent to induce Plaintiff to rely upon the misrepresentations and lack of knowledge regarding concealed facts, and act upon same and enter into the Franchise Agreement.

212.    Plaintiff Haleiwa did in fact rely upon and was in fact induced by Defendants' false representations and concealed material facts and did then enter into the Franchise Agreement.

213.    Subsequent to execution of the Franchise Agreement, Defendant Ratcliff and Defendant Kirk (and other authorized representatives of the Defendant HFA), on behalf of themselves and Defendant Franchisor, continued to knowingly make false misrepresentations to Plaintiff Haleiwa and knowingly concealed material facts from said Plaintiff, including said Plaintiff's principals, with the intent to induce Plaintiff to rely upon the misrepresentations and lack of knowledge regarding concealed facts, and act upon same to commence construction, development, and operation of the Hawaii Fluid Art Studio and franchised business, and to refrain from the termination and/or transfer of same to avoid or mitigate sustaining further damages and losses.

214.    Plaintiff Haleiwa did in fact rely upon and was in fact induced by Defendants' false representations and concealed material facts, and, subsequent to execution of the Franchise Agreement, acted upon same to commence construction, development, and operation of the Hawaii Fluid Art Studio and franchised business, and to refrain from the termination and/or transfer of same to avoid or mitigate sustaining further damages and losses.

215.    Plaintiff Haleiwa has suffered damages as a result of its reliance upon the deliberately false representations and concealment of material facts by Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, in an amount to be determined at trial.

COUNT IX – COMMON LAW FRAUD

BICENTENNIAL AGAINST DEFENDANTS HFA, RATCLIFF AND KIRK

216.    Plaintiff Bicentennial repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

217.    Prior to Plaintiff Bicentennial entering into the Franchise Agreement, Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, made materially false representations to said Plaintiff including, but not limited to, those fully articulated herein, and specifically including those set forth in paragraphs 45-61, 63-68, 71-78 and 92-101 above. Prior to the aforesaid Plaintiff entering into the Franchise Agreement, Defendant Kirk also made materially false representations to said Plaintiff as set forth above.

218.    Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, knew that these representations were false at all times, including at the time the statements were made.

219.    Prior to Plaintiff Bicentennial entering into the Franchise Agreement, Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, also concealed

material facts from said Plaintiff, including said Plaintiff's principals, which were vital to making an informed decision whether to enter into the Franchise Agreement, and undertake the significant time and expense associated with same including, but not limited to, those fully articulated herein.

220.    Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, knew that the facts concealed from Plaintiff Bicentennial were material and that had Defendants truthfully disclosed same, Plaintiff would have been able to make an informed decision whether to enter into the Franchise Agreement, and undertake the significant time and expense associated with same, yet Defendants deprived Plaintiff of this ability by deliberate concealment.

221.    Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, knowingly made the false misrepresentations to Plaintiff Bicentennial and knowingly concealed material facts from said Plaintiff, including said Plaintiff's principals, with the intent to induce Plaintiff to rely upon the misrepresentations and lack of knowledge regarding concealed facts, and act upon same and enter into the Franchise Agreement.

222.    Plaintiff Bicentennial did in fact rely upon and was in fact induced by Defendants' false representations and concealed material facts and did then enter into the Franchise Agreement.

223.    Subsequent to execution of the Franchise Agreement, Defendant Ratcliff and Defendant Kirk (and other authorized representatives of the Defendant HFA), on behalf of themselves and Defendant Franchisor, continued to knowingly make false misrepresentations to Plaintiff Bicentennial and knowingly concealed material facts from said Plaintiff, including said Plaintiff's principals, with the intent to induce Plaintiff to rely upon the misrepresentations and lack of knowledge regarding concealed facts, and act upon same to commence construction, development, and operation of the Hawaii Fluid Art Studio and franchised business, and to refrain from the termination and/or transfer of same to avoid or mitigate sustaining further damages and losses.

224.    Plaintiff Bicentennial did in fact rely upon and was in fact induced by Defendants' false representations and concealed material facts, and, subsequent to execution of the Franchise Agreement, acted upon same to commence construction, development, and operation of the Hawaii Fluid Art Studio and franchised business, and to refrain from the termination and/or transfer of same to avoid or mitigate sustaining further damages and losses.

225.    Plaintiff Bicentennial has suffered damages as a result of its reliance upon the deliberately false representations and concealment of material facts by Defendant Ratcliff, on behalf of herself and Defendant Franchisor, in an amount to be determined at trial.

<u>COUNT X – COMMON LAW FRAUD</u>

<u>CANDLEBY AGAINST DEFENDANTS HFA, RATCLIFF AND KIRK</u>

226.    Plaintiff Candleby repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

227.    Prior to Plaintiff Candleby entering into the Franchise Agreement, Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, made materially false representations to said Plaintiff including, but not limited to, those fully articulated herein, and specifically including those set forth in paragraphs 45-61, 63-68, 71-78 and 92-101 above. Prior to the aforesaid Plaintiff entering into the Franchise Agreement, Defendant Kirk also made materially false representations to said Plaintiff as set forth above.

228.    Defendants Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, knew that these representations were false at all times, including at the time the statements were made.

229.    Prior to Plaintiff Candleby entering into the Franchise Agreement, Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, also concealed material facts from said Plaintiff, including said Plaintiff's principals, which were vital to making

an informed decision whether to enter into the Franchise Agreement, and undertake the significant time and expense associated with same including, but not limited to, those fully articulated herein.

230.    Defendant Ratcliff and Defendant Kirk and, on behalf of themselves and Defendant Franchisor, knew that the facts concealed from Plaintiff Candleby were material and that had Defendants truthfully disclosed same, Plaintiff would have been able to make an informed decision whether to enter into the Franchise Agreement, and undertake the significant time and expense associated with same, yet Defendants deprived Plaintiff of this ability by deliberate concealment.

231.    Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, knowingly made the false misrepresentations to Plaintiff Candleby and knowingly concealed material facts from said Plaintiff, including said Plaintiff's principals, with the intent to induce Plaintiff to rely upon the misrepresentations and lack of knowledge regarding concealed facts, and act upon same and enter into the Franchise Agreement.

232.    Plaintiff Candleby did in fact rely upon and was in fact induced by Defendants' false representations and concealed material facts and did then enter into the Franchise Agreement.

233.    Subsequent to execution of the Franchise Agreement, Defendant Ratcliff and Defendant Kirk (and other authorized representatives of the Defendant HFA), on behalf of themselves and Defendant Franchisor, continued to knowingly make false misrepresentations to Plaintiff Candleby and knowingly concealed material facts from said Plaintiff, including said Plaintiff's principals, with the intent to induce Plaintiff to rely upon the misrepresentations and lack of knowledge regarding concealed facts, and act upon same to commence construction, development, and operation of the Hawaii Fluid Art Studio and franchised business, and to refrain from the termination and/or transfer of same to avoid or mitigate sustaining further damages and losses.

234.    Plaintiff Candleby did in fact rely upon and was in fact induced by Defendants' false representations and concealed material facts, and, subsequent to execution of the Franchise Agreement, acted upon same to commence construction, development, and operation of the Hawaii Fluid Art Studio and franchised business, and to refrain from the termination and/or transfer of same to avoid or mitigate sustaining further damages and losses.

235.    Plaintiff Candleby has suffered damages as a result of its reliance upon the deliberately false representations and concealment of material facts by Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, in an amount to be determined at trial.

<u>COUNT XI – COMMON LAW FRAUD</u>

<u>OHANA AGAINST DEFENDANTS HFA, RATCLIFF AND KIRK</u>

236.    Plaintiff Ohana repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

237.    Prior to Plaintiff Ohana entering into the Franchise Agreement, Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, made materially false representations to said Plaintiff including, but not limited to, those fully articulated herein, and specifically including those set forth in paragraphs 45-61, 63-68, 71-78 and 92-101 above.  Prior to the aforesaid Plaintiff entering into the Franchise Agreement, Defendant Kirk also made materially false representations to said Plaintiff as set forth above.

238.    Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, knew that these representations were false at all times, including at the time the statements were made.

239.    Prior to Plaintiff Ohana entering into the Franchise Agreement, Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, also concealed material

facts from said Plaintiff, including said Plaintiff's principals, which were vital to making an informed decision whether to enter into the Franchise Agreement, and undertake the significant time and expense associated with same including, but not limited to, those fully articulated herein.

240.    Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, knew that the facts concealed from Plaintiff Ohana were material and that had Defendants truthfully disclosed same, Plaintiff would have been able to make an informed decision whether to enter into the Franchise Agreement, and undertake the significant time and expense associated with same, yet Defendants deprived Plaintiff of this ability by deliberate concealment.

241.    Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, knowingly made the false misrepresentations to Plaintiff Ohana and knowingly concealed material facts from said Plaintiff, including said Plaintiff's principals, with the intent to induce Plaintiff to rely upon the misrepresentations and lack of knowledge regarding concealed facts, and act upon same and enter into the Franchise Agreement.

242.    Plaintiff Ohana did in fact rely upon and was in fact induced by Defendants' false representations and concealed material facts and did then enter into the Franchise Agreement.

243.    Subsequent to execution of the Franchise Agreement, Defendant Ratcliff and Defendant Kirk (and other authorized representatives of the Defendant HFA), on behalf of themselves and Defendant Franchisor, continued to knowingly make false misrepresentations to Plaintiff Ohana and knowingly concealed material facts from said Plaintiff, including said Plaintiff's principals, with the intent to induce Plaintiff to rely upon the misrepresentations and lack of knowledge regarding concealed facts, and act upon same to commence construction, development, and operation of the Hawaii Fluid Art Studio and franchised business, and to refrain from the termination and/or transfer of same to avoid or mitigate sustaining further damages and losses.

244.    Plaintiff Ohana did in fact rely upon and was in fact induced by Defendants' false representations and concealed material facts, and, subsequent to execution of the Franchise Agreement, acted upon same to commence construction, development, and operation of the Hawaii Fluid Art Studio and franchised business, and to refrain from the termination and/or transfer of same to avoid or mitigate sustaining further damages and losses.

245.    Plaintiff Ohana has suffered damages as a result of its reliance upon the deliberately false representations and concealment of material facts by Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, in an amount to be determined at trial.

<u>COUNT XII – COMMON LAW FRAUD</u>

<u>3FIFTY AGAINST DEFENDANTS HFA, RATCLIFF AND KIRK</u>

246.    Plaintiff 3Fifty repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

247.    Prior to Plaintiff 3Fifty entering into the Franchise Agreement, Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, made materially false representations to said Plaintiff including, but not limited to, those fully articulated herein, and specifically including those set forth in paragraphs 45-61, 63-68, 71-78 and 92-101 above.  Prior to the aforesaid Plaintiff entering into the Franchise Agreement, Defendant Kirk also made materially false representations to said Plaintiff as set forth above.

248.    Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, knew that these representations were false at all times, including at the time the statements were made.

249.    Prior to Plaintiff 3Fifty entering into the Franchise Agreement, Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, also concealed material facts from said Plaintiff, including said Plaintiff's principals, which were vital to making an

informed decision whether to enter into the Franchise Agreement, and undertake the significant time and expense associated with same including, but not limited to, those fully articulated herein.

250.    Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, knew that the facts concealed from Plaintiff 3Fifty were material and that had Defendants truthfully disclosed same, Plaintiff would have been able to make an informed decision whether to enter into the Franchise Agreement, and undertake the significant time and expense associated with same, yet Defendants deprived Plaintiff of this ability by deliberate concealment.

251.    Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, knowingly made the false misrepresentations to Plaintiff 3Fifty and knowingly concealed material facts from said Plaintiff, including said Plaintiff's principals, with the intent to induce Plaintiff to rely upon the misrepresentations and lack of knowledge regarding concealed facts, and act upon same and enter into the Franchise Agreement.

252.    Plaintiff 3Fifty did in fact rely upon and was in fact induced by Defendants' false representations and concealed material facts and did then enter into the Franchise Agreement.

253.    Subsequent to execution of the Franchise Agreement, Defendant Ratcliff and Defendant Kirk (and other authorized representatives of the Defendant HFA), on behalf of themselves and Defendant Franchisor, continued to knowingly make false misrepresentations to Plaintiff 3Fifty and knowingly concealed material facts from said Plaintiff, including said Plaintiff's principals, with the intent to induce Plaintiff to rely upon the misrepresentations and lack of knowledge regarding concealed facts, and act upon same to commence construction, development, and operation of the Hawaii Fluid Art Studio and franchised business, and to refrain from the termination and/or transfer of same to avoid or mitigate sustaining further damages and losses.

254.    Plaintiff 3Fifty did in fact rely upon and was in fact induced by Defendants' false representations and concealed material facts, and, subsequent to execution of the Franchise Agreement, acted upon same to commence construction, development, and operation of the Hawaii Fluid Art Studio and franchised business, and to refrain from the termination and/or transfer of same to avoid or mitigate sustaining further damages and losses.

255.    Plaintiff 3Fifty has suffered damages as a result of its reliance upon the deliberately false representations and concealment of material facts by Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, in an amount to be determined at trial.

<u>COUNT XIII – COMMON LAW FRAUD</u>

<u>WOLF MOON AGAINST DEFENDANTS HFA, RATCLIFF AND KIRK</u>

256.    Plaintiff Wolf Moon repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

257.    Prior to Plaintiff Wolf Moon entering into the Franchise Agreement, Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, made materially false representations to said Plaintiff including, but not limited to, those fully articulated herein, and specifically including those set forth in paragraphs 45-61, 63-68, 71-78 and 92-101 above. Prior to the aforesaid Plaintiff entering into the Franchise Agreement, Defendant Kirk also made materially false representations to said Plaintiff as set forth above.

258.    Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, knew that these representations were false at all times, including at the time the statements were made.

259.    Prior to Plaintiff Wolf Moon entering into the Franchise Agreement, Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, also concealed material facts from said Plaintiff, including said Plaintiff's principals, which were vital to making

an informed decision whether to enter into the Franchise Agreement, and undertake the significant time and expense associated with same including, but not limited to, those fully articulated herein.

260.    Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, knew that the facts concealed from Plaintiff Wolf Moon were material and that had Defendants truthfully disclosed same, Plaintiff would have been able to make an informed decision whether to enter into the Franchise Agreement, and undertake the significant time and expense associated with same, yet Defendants deprived Plaintiff of this ability by deliberate concealment.

261.    Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, knowingly made the false misrepresentations to Plaintiff Wolf Moon and knowingly concealed material facts from said Plaintiff, including said Plaintiff's principals, with the intent to induce Plaintiff to rely upon the misrepresentations and lack of knowledge regarding concealed facts, and act upon same and enter into the Franchise Agreement.

262.    Plaintiff Wolf Moon did in fact rely upon and was in fact induced by Defendants' false representations and concealed material facts and did then enter into the Franchise Agreement.

263.    Subsequent to execution of the Franchise Agreement, Defendant Ratcliff and Defendant Kirk (and other authorized representatives of the Defendant HFA), on behalf of themselves and Defendant Franchisor, continued to knowingly make false misrepresentations to Plaintiff Wolf Moon and knowingly concealed material facts from said Plaintiff, including said Plaintiff's principals, with the intent to induce Plaintiff to rely upon the misrepresentations and lack of knowledge regarding concealed facts, and act upon same to commence construction, development, and operation of the Hawaii Fluid Art Studio and franchised business, and to refrain from the termination and/or transfer of same to avoid or mitigate sustaining further damages and losses.

264.    Plaintiff Wolf Moon did in fact rely upon and was in fact induced by Defendants' false representations and concealed material facts, and, subsequent to execution of the Franchise Agreement, acted upon same to commence construction, development, and operation of the Hawaii Fluid Art Studio and franchised business, and to refrain from the termination and/or transfer of same to avoid or mitigate sustaining further damages and losses.

265.    Plaintiff Wolf Moon has suffered damages as a result of its reliance upon the deliberately false representations and concealment of material facts by Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, in an amount to be determined at trial.

<u>COUNT XIV – COMMON LAW FRAUD</u>

<u>LAVA AGAINST DEFENDANT HFA, RATCLIFF AND KIRK</u>

266.    Plaintiff Lava repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

267.    Prior to Plaintiff Lava entering into the Franchise Agreement, Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, made materially false representations to said Plaintiff including, but not limited to, those fully articulated herein, and specifically including those set forth in paragraphs 45-61, 63-68, 71-78 and 92-101 above.  Prior to the aforesaid Plaintiff entering into the Franchise Agreement, Defendant Kirk also made materially false representations to said Plaintiff as set forth above.

268.    Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, knew that these representations were false at all times, including at the time the statements were made.

269.    Prior to Plaintiff Lava entering into the Franchise Agreement, Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, also concealed material

facts from said Plaintiff, including said Plaintiff's principals, which were vital to making an informed decision whether to enter into the Franchise Agreement, and undertake the significant time and expense associated with same including, but not limited to, those fully articulated herein.

270.    Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, knew that the facts concealed from Plaintiff Lava were material and that had Defendants truthfully disclosed same, Plaintiff would have been able to make an informed decision whether to enter into the Franchise Agreement, and undertake the significant time and expense associated with same, yet Defendants deprived Plaintiff of this ability by deliberate concealment.

271.    Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, knowingly made the false misrepresentations to Plaintiff Lava and knowingly concealed material facts from said Plaintiff, including said Plaintiff's principals, with the intent to induce Plaintiff to rely upon the misrepresentations and lack of knowledge regarding concealed facts, and act upon same and enter into the Franchise Agreement.

272.    Plaintiff Lava did in fact rely upon and was in fact induced by Defendants' false representations and concealed material facts and did then enter into the Franchise Agreement.

273.    Subsequent to execution of the Franchise Agreement, Defendant Ratcliff and Defendant Kirk (and other authorized representatives of the Defendant HFA), on behalf of themselves and Defendant Franchisor, continued to knowingly make false misrepresentations to Plaintiff Lava and knowingly concealed material facts from said Plaintiff, including said Plaintiff's principals, with the intent to induce Plaintiff to rely upon the misrepresentations and lack of knowledge regarding concealed facts, and act upon same to commence construction, development, and operation of the Hawaii Fluid Art Studio and franchised business, and to refrain from the termination and/or transfer of same to avoid or mitigate sustaining further damages and losses.

274.    Plaintiff Lava did in fact rely upon and was in fact induced by Defendants' false representations and concealed material facts, and, subsequent to execution of the Franchise Agreement, acted upon same to commence construction, development, and operation of the Hawaii Fluid Art Studio and franchised business, and to refrain from the termination and/or transfer of same to avoid or mitigate sustaining further damages and losses.

275.    Plaintiff Lava has suffered damages as a result of its reliance upon the deliberately false representations and concealment of material facts by Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, in an amount to be determined at trial.

## COUNT XV – COMMON LAW FRAUD

## FOXKNOX AGAINST DEFENDANT HFA, RATCLIFF AND KIRK

276.    Plaintiff FoxKnox repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

277.    Prior to Plaintiff FoxKnox entering into the Franchise Agreement, Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, made materially false representations to said Plaintiff including, but not limited to, those fully articulated herein, and specifically including those set forth in paragraphs 45-61, 63-68, 71-78 and 92-101 above. Prior to the aforesaid Plaintiff entering into the Franchise Agreement, Defendant Kirk also made materially false representations to said Plaintiff as set forth above.

278.    Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, knew that these representations were false at all times, including at the time the statements were made.

279.    Prior to Plaintiff FoxKnox entering into the Franchise Agreement, Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, also concealed material facts from said Plaintiff, including said Plaintiff's principals, which were vital to making

an informed decision whether to enter into the Franchise Agreement, and undertake the significant time and expense associated with same including, but not limited to, those fully articulated herein.

280.    Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, knew that the facts concealed from Plaintiff FoxKnox were material and that had Defendants truthfully disclosed same, Plaintiff would have been able to make an informed decision whether to enter into the Franchise Agreement, and undertake the significant time and expense associated with same, yet Defendants deprived Plaintiff of this ability by deliberate concealment.

281.    Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, knowingly made the false misrepresentations to Plaintiff FoxKnox and knowingly concealed material facts from said Plaintiff, including said Plaintiff's principals, with the intent to induce Plaintiff to rely upon the misrepresentations and lack of knowledge regarding concealed facts, and act upon same and enter into the Franchise Agreement.

282.    Plaintiff FoxKnox did in fact rely upon and was in fact induced by Defendants' false representations and concealed material facts and did then enter into the Franchise Agreement.

283.    Subsequent to execution of the Franchise Agreement, Defendant Ratcliff and Defendant Kirk (and other authorized representatives of the Defendant HFA), on behalf of themselves and Defendant Franchisor, continued to knowingly make false misrepresentations to Plaintiff FoxKnox and knowingly concealed material facts from said Plaintiff, including said Plaintiff's principals, with the intent to induce Plaintiff to rely upon the misrepresentations and lack of knowledge regarding concealed facts, and act upon same to commence construction, development, and operation of the Hawaii Fluid Art Studio and franchised business, and to refrain from the termination and/or transfer of same to avoid or mitigate sustaining further damages and losses.

284.    Plaintiff FoxKnox did in fact rely upon and was in fact induced by Defendants' false representations and concealed material facts, and, subsequent to execution of the Franchise Agreement, acted upon same to commence construction, development, and operation of the Hawaii Fluid Art Studio and franchised business, and to refrain from the termination and/or transfer of same to avoid or mitigate sustaining further damages and losses.

285.    Plaintiff FoxKnox has suffered damages as a result of its reliance upon the deliberately false representations and concealment of material facts by Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, in an amount to be determined at trial.

<u>COUNT XVI – COMMON LAW FRAUD</u>

<u>PATEL AGAINST DEFENDANTS HFA AND RATCLIFF</u>

286.    Plaintiff Patel repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

287.    Prior to Plaintiff Patel entering into the Franchise Agreement, Defendant Ratcliff, on behalf of herself and Defendant Franchisor, made materially false representations to said Plaintiff including, but not limited to, those fully articulated herein, and specifically including those set forth in paragraphs 45-61, 63-68, 71-78 and 92-101 above.

288.    Defendant Ratcliff, on behalf of herself and Defendant Franchisor, knew that these representations were false at all times, including at the time the statements were made.

289.    Prior to Plaintiff Patel entering into the Franchise Agreement, Defendant Ratcliff, on behalf of herself and Defendant Franchisor, also concealed material facts from said Plaintiff, including said Plaintiff's principals, which were vital to making an informed decision whether to enter into the Franchise Agreement, and undertake the significant time and expense associated with same including, but not limited to, those fully articulated herein.

290.    Defendant Ratcliff, on behalf of herself and Defendant Franchisor, knew that the facts concealed from Plaintiff Patel were material and that had Defendants truthfully disclosed same, Plaintiff would have been able to make an informed decision whether to enter into the Franchise Agreement, and undertake the significant time and expense associated with same, yet Defendants deprived Plaintiff of this ability by deliberate concealment.

291.    Defendant Ratcliff, on behalf of herself and Defendant Franchisor, knowingly made the false misrepresentations to Plaintiff Patel and knowingly concealed material facts from said Plaintiff, including said Plaintiff's principals, with the intent to induce Plaintiff to rely upon the misrepresentations and lack of knowledge regarding concealed facts, and act upon same and enter into the Franchise Agreement.

292.    Plaintiff Patel did in fact rely upon and was in fact induced by Defendant's false representations and concealed material facts and did then enter into the Franchise Agreement.

293.    Subsequent to execution of the Franchise Agreement, Defendant Ratcliff (and other authorized representatives of the Defendant HFA), on behalf of themselves and Defendant Franchisor, continued to knowingly make false misrepresentations to Plaintiff Patel and knowingly concealed material facts from said Plaintiff, including said Plaintiff's principals, with the intent to induce Plaintiff to rely upon the misrepresentations and lack of knowledge regarding concealed facts, and act upon same to commence construction, development, and operation of the Hawaii Fluid Art Studio and franchised business, and to refrain from the termination and/or transfer of same to avoid or mitigate sustaining further damages and losses.

294.    Plaintiff Patel did in fact rely upon and was in fact induced by Defendants' false representations and concealed material facts, and, subsequent to execution of the Franchise Agreement, acted upon same to commence construction, development, and operation of the Hawaii

Fluid Art Studio and franchised business, and to refrain from the termination and/or transfer of same to avoid or mitigate sustaining further damages and losses.

295.    Plaintiff Patel has suffered damages as a result of its reliance upon the deliberately false representations and concealment of material facts by Defendant Ratcliff, on behalf of herself and Defendant Franchisor, in an amount to be determined at trial.

COUNT XVII – COMMON LAW FRAUD

ESK AGAINST DEFENDANTS HFA, RATCLIFF AND KIRK

296.    Plaintiff ESK repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

297.    Prior to Plaintiff ESK entering into the Franchise Agreement, Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, made materially false representations to said Plaintiff's principals including, but not limited to, those fully articulated herein, and specifically including those set forth in paragraphs 45-61, 63-68, 71-78 and 92-101 above.

298.    Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, knew that these representations were false at all times, including at the time the statements were made.

299.    Prior to Plaintiff ESK entering into the Franchise Agreement, Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, also concealed material facts from said Plaintiff, including said Plaintiff's principals, which were vital to making an informed decision whether to enter into the Franchise Agreement, and undertake the significant time and expense associated with same including, but not limited to, those fully articulated herein.

300.    Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, knew that the facts concealed from Plaintiff ESK were material and that had

Defendants truthfully disclosed same, Plaintiff would have been able to make an informed decision whether to enter into the Franchise Agreement, and undertake the significant time and expense associated with same, yet Defendants deprived Plaintiff of this ability by deliberate concealment.

301.    Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, knowingly made the false misrepresentations to Plaintiff ESK and knowingly concealed material facts from said Plaintiff, including said Plaintiff's principals, including said Plaintiff's principals, with the intent to induce Plaintiff to rely upon the misrepresentations and lack of knowledge regarding concealed facts, and act upon same and enter into the Franchise Agreement.

302.    Plaintiff ESK did in fact rely upon and was in fact induced by Defendants' false representations and concealed material facts and did then enter into the Franchise Agreement.

303.    Subsequent to execution of the Franchise Agreement, Defendant Ratcliff and Defendant Kirk (and other authorized representatives of the Defendant HFA), on behalf of themselves and Defendant Franchisor, continued to knowingly make false misrepresentations to Plaintiff ESK and knowingly concealed material facts from said Plaintiff, including said Plaintiff's principals, with the intent to induce Plaintiff to rely upon the misrepresentations and lack of knowledge regarding concealed facts, and act upon same to commence construction, development, and operation of the Hawaii Fluid Art Studio and franchised business, and to refrain from the termination and/or transfer of same to avoid or mitigate sustaining further damages and losses.

304.    Plaintiff ESK did in fact rely upon and was in fact induced by Defendants' false representations and concealed material facts, and, subsequent to execution of the Franchise Agreement, acted upon same to commence construction, development, and operation of the Hawaii Fluid Art Studio and franchised business, and to refrain from the termination and/or transfer of same to avoid or mitigate sustaining further damages and losses.

305.    Plaintiff ESK has suffered damages as a result of its reliance upon the deliberately false representations and concealment of material facts by Defendant Ratcliff and Defendant Kirk, on behalf of themselves and Defendant Franchisor, in an amount to be determined at trial.

## COUNT XVIII – BREACH OF CONTRACT – FRANCHISE AGREEMENT

## DGE AGAINST DEFENDANT HFA

306.    Plaintiff DGE repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

307.    Plaintiff DGE and Defendant HFA entered into a Franchise Agreement.

308.    The Franchise Agreement is a valid contract.

309.    Plaintiff DGE fully performed its obligations under the Franchise Agreement

310.    Defendant HFA failed to perform its obligations under said Franchise Agreement as set forth hereinabove.

311.    Plaintiff DGE has suffered damages in an amount to be determined at trial as a result of Defendant HFA's breaches.

## COUNT XIX – BREACH OF CONTRACT – FRANCHISE AGREEMENT

## FUN ART AGAINST DEFENDANT HFA

312.    Plaintiff Fun Art repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

313.    Plaintiff Fun Art and Defendant HFA entered into a Franchise Agreement.

314.    The Franchise Agreement is a valid contract.

315.    Plaintiff Fun Art fully performed its obligations under the Franchise Agreement.

316.    Defendant HFA failed to perform its obligations under said Franchise Agreement as set forth hereinabove.

317.    Plaintiff Fun Art has suffered damages in an amount to be determined at trial as a result of Defendant HFA's breaches.

## COUNT XX – BREACH OF CONTRACT – FRANCHISE AGREEMENT

## KKRK AGAINST DEFENDANT HFA

318.    Plaintiff KKRK repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

319.    Plaintiff KKRK and Defendant HFA entered into a Franchise Agreement.

320.    The Franchise Agreement is a valid contract.

321.    Plaintiff KKRK fully performed its obligations under the Franchise Agreement.

322.    Defendant HFA failed to perform its obligations under said Franchise Agreement as set forth hereinabove.

323.    Plaintiff KKRK has suffered damages in an amount to be determined at trial as a result of Defendant HFA's breaches.

## COUNT XXI – BREACH OF CONTRACT – FRANCHISE AGREEMENT

## VICE ART AGAINST DEFENDANT HFA

324.    Plaintiff Vice Art repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

325.    Plaintiff Vice Art and Defendant HFA entered into a Franchise Agreement.

326.    The Franchise Agreement is a valid contract.

327.    Plaintiff Vice Art fully performed its obligations under the Franchise Agreement.

328.    Defendant HFA failed to perform its obligations under said Franchise Agreement as set forth hereinabove.

329.    Plaintiff Vice Art has suffered damages in an amount to be determined at trial as a result of Defendant HFA's breaches.

## COUNT XXII – BREACH OF CONTRACT – FRANCHISE AGREEMENT

### HFA GULF COAST AGAINST DEFENDANT HFA

330.    Plaintiff HFA Gulf Coast repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

331.    Plaintiff HFA Gulf Coast and Defendant HFA entered into a Franchise Agreement.

332.    The Franchise Agreement is a valid contract.

333.    Plaintiff HFA Gulf Coast fully performed its obligations under the Franchise Agreement.

334.    Defendant HFA failed to perform its obligations under said Franchise Agreement as set forth hereinabove.

335.    Plaintiff HFA Gulf Coast has suffered damages in an amount to be determined at trial as a result of Defendant HFA's breaches.

## COUNT XXIII – BREACH OF CONTRACT – FRANCHISE AGREEMENT

### BOLTIMO AGAINST DEFENDANT HFA

336.    Plaintiff Boltimo repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

337.    Plaintiff Boltimo and Defendant HFA entered into a Franchise Agreement.

338.    The Franchise Agreement is a valid contract.

339.    Plaintiff Boltimo fully performed its obligations under the Franchise Agreement.

340.    Defendant HFA failed to perform its obligations under said Franchise Agreement as set forth hereinabove.

341.     Plaintiff Boltimo has suffered damages in an amount to be determined at trial as a result of Defendant HFA's breaches.

## COUNT XXIV – BREACH OF CONTRACT – FRANCHISE AGREEMENT

## DPC AGAINST DEFENDANT HFA

342.     Plaintiff DPC repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

343.     Plaintiff DPC and Defendant HFA entered into a Franchise Agreement.

344.     The Franchise Agreement is a valid contract.

345.     Plaintiff DPC fully performed its obligations under the Franchise Agreement.

346.     Defendant HFA failed to perform its obligations under said Franchise Agreement as set forth hereinabove.

347.     Plaintiff DPC has suffered damages in an amount to be determined at trial as a result of Defendant HFA's breaches.

## COUNT XXV – BREACH OF CONTRACT – FRANCHISE AGREEMENT

## HALEIWA AGAINST DEFENDANT HFA

348.     Plaintiff Haleiwa repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

349.     Plaintiff Haleiwa and Defendant HFA entered into a Franchise Agreement.

350.     The Franchise Agreement is a valid contract.

351.     Plaintiff Haleiwa fully performed its obligations under the Franchise Agreement.

352.     Defendant HFA failed to perform its obligations under said Franchise Agreement as set forth hereinabove.

353. Plaintiff Haleiwa has suffered damages in an amount to be determined at trial as a result of Defendant HFA's breaches.

354. Plaintiff Bicentennial repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

## COUNT XXVI – BREACH OF CONTRACT – FRANCHISE AGREEMENT

## BICENTENNIAL AGAINST DEFENDANT HFA

355. Plaintiff Bicentennial repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

356. Plaintiff Bicentennial and Defendant HFA entered into a Franchise Agreement.

357. The Franchise Agreement is a valid contract.

358. Plaintiff Bicentennial fully performed its obligations under the Franchise Agreement.

359. Defendant HFA failed to perform its obligations under said Franchise Agreement as set forth hereinabove.

360. Plaintiff Bicentennial has suffered damages in an amount to be determined at trial as a result of Defendant HFA's breaches.

## COUNT XXVII – BREACH OF CONTRACT – FRANCHISE AGREEMENT

## CANDLEBY AGAINST DEFENDANT HFA

361. Plaintiff Candleby repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

362. Plaintiff Candleby and Defendant HFA entered into a Franchise Agreement.

363. The Franchise Agreement is a valid contract.

364. Plaintiff Candleby fully performed its obligations under the Franchise Agreement.

365.    Defendant HFA failed to perform its obligations under said Franchise Agreement as set forth hereinabove.

366.    Plaintiff Candleby has suffered damages in an amount to be determined at trial as a result of Defendant HFA's breaches.

## COUNT XXVIII – BREACH OF CONTRACT – FRANCHISE AGREEMENT

## OHANA AGAINST DEFENDANT HFA

367.    Plaintiff Ohana repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

368.    Plaintiff Ohana and Defendant HFA entered into a Franchise Agreement.

369.    The Franchise Agreement is a valid contract.

370.    Plaintiff Ohana fully performed its obligations under the Franchise Agreement.

371.    Defendant HFA failed to perform its obligations under said Franchise Agreement as set forth hereinabove.

372.    Plaintiff Ohana has suffered damages in an amount to be determined at trial as a result of Defendant HFA's breaches.

## COUNT XXIX – BREACH OF CONTRACT – FRANCHISE AGREEMENT

## 3FIFTY AGAINST DEFENDANT HFA

373.    Plaintiff 3Fifty repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

374.    Plaintiff 3Fifty and Defendant HFA entered into a Franchise Agreement.

375.    The Franchise Agreement is a valid contract.

376.    Plaintiff 3Fifty fully performed its obligations under the Franchise Agreement.

377.    Defendant HFA failed to perform its obligations under said Franchise Agreement as set forth hereinabove.

378.    Plaintiff 3Fifty has suffered damages in an amount to be determined at trial as a result of Defendant HFA's breaches.

<u>COUNT XXX – BREACH OF CONTRACT – FRANCHISE AGREEMENT</u>

<u>WOLF MOON AGAINST DEFENDANT HFA</u>

379.    Plaintiff Wolf Moon repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

380.    Plaintiff Wolf Moon and Defendant HFA entered into a Franchise Agreement.

381.    The Franchise Agreement is a valid contract.

382.    Plaintiff Wolf Moon fully performed its obligations under the Franchise Agreement.

383.    Defendant HFA failed to perform its obligations under said Franchise Agreement as set forth hereinabove.

384.    Plaintiff Wolf Moon has suffered damages in an amount to be determined at trial as a result of Defendant HFA's breaches.

<u>COUNT XXXI – BREACH OF CONTRACT – FRANCHISE AGREEMENT</u>

<u>LAVA AGAINST DEFENDANT HFA</u>

385.    Plaintiff Lava repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

386.    Plaintiff Lava and Defendant HFA entered into a Franchise Agreement.

387.    The Franchise Agreement is a valid contract.

388.    Plaintiff Lava fully performed its obligations under the Franchise Agreement.

389. Defendant HFA failed to perform its obligations under said Franchise Agreement as set forth hereinabove.

390. Plaintiff Lava has suffered damages in an amount to be determined at trial as a result of Defendant HFA's breaches.

## COUNT XXXII – BREACH OF CONTRACT – FRANCHISE AGREEMENT

### FOXKNOX AGAINST DEFENDANT HFA

391. Plaintiff FoxKnox repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

392. Plaintiff FoxKnox and Defendant HFA entered into a Franchise Agreement.

393. The Franchise Agreement is a valid contract.

394. Plaintiff FoxKnox fully performed its obligations under the Franchise Agreement.

395. Defendant HFA failed to perform its obligations under said Franchise Agreement as set forth hereinabove.

396. Plaintiff FoxKnox has suffered damages in an amount to be determined at trial as a result of Defendant HFA's breaches.

## COUNT XXXIII – BREACH OF CONTRACT – FRANCHISE AGREEMENT

### PATEL AGAINST DEFENDANT HFA

397. Plaintiff Patel repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

398. Plaintiff Patel and Defendant HFA entered into a Franchise Agreement.

399. The Franchise Agreement is a valid contract.

400. Plaintiff Patel fully performed its obligations under the Franchise Agreement.

401.    Defendant HFA failed to perform its obligations under said Franchise Agreement as set forth hereinabove.

402.    Plaintiff Patel has suffered damages in an amount to be determined at trial as a result of Defendant HFA's breaches.

## COUNT XXXIV – BREACH OF CONTRACT – FRANCHISE AGREEMENT

## ESK AGAINST DEFENDANT HFA

403.    Plaintiff ESK repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

404.    Plaintiff ESK and Defendant HFA entered into a Franchise Agreement.

405.    The Franchise Agreement is a valid contract.

406.    Plaintiff ESK fully performed its obligations under the Franchise Agreement.

407.    Defendant HFA failed to perform its obligations under said Franchise Agreement as set forth hereinabove.

408.    Plaintiff ESK has suffered damages in an amount to be determined at trial as a result of Defendant HFA's breaches.

## COUNT XXXV – CONVERSION – PLAINTIFF DGE AGAINST ALL DEFENDANTS

409.    Plaintiff DGE repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

410.    At all times Plaintiff DGE had an interest and/or right to possession in their own funds and accounts, with those funds rightfully belonging to Plaintiff DGE in conjunction with its ownership and operation of its Hawaii Fluid Art Studios and franchised businesses.

411.    Defendant Franchisor and Defendant Ratcliff wrongfully took and possessed Plaintiff DGE's money, without authorization and for unauthorized purposes.

412.    In addition, Defendant Franchisor and Defendant Ratcliff wrongfully took and possessed Plaintiff DGE's money, without authorization and for unauthorized purposes, for uses unrelated to those prescribed in the Franchise Agreement, including but not limited to defraying costs and expenses of Defendants unrelated to fees and funds (i.e. Marketing, Technology) described in the Franchise Agreement and/or for the personal use of Defendant Ratcliff or other Defendants, with Defendants treating Plaintiff DGE's money as if it were their own.

413.    Plaintiff DGE has made demands on the Defendant Franchisor and Defendant Ratcliff personally for the return of their monies and property, but Defendants have refused the return of same.

414.    Upon information and belief, Defendant Ratcliff has caused such funds to be wrongfully conveyed, transferred, sold and/or assigned to one of the other Defendants, which Defendants Strong, HFAU, HFA Supply, HFAP, HFA Tech, HFA Spark, HFAM, and MT have similarly took, withheld and possessed without authorization and for unauthorized purposes, for uses unrelated to those prescribed in the Franchise Agreement, including but not limited to defraying costs and expenses of Defendants unrelated to fees and funds (i.e. Marketing, Technology) described in the Franchise Agreement and/or for the personal use of Defendant Ratcliff or other Defendants, with Defendants treating Plaintiff DGE's money as if were their own, and have refused to return said monies to Plaintiff despite repeated demands upon Defendant Ratcliff who controls all of the Defendant entities.

415.    By reason of the foregoing, Plaintiff DGE has sustained damages in an amount to be determined at trial, plus applicable interest, costs, and attorneys' fees.

COUNT XXXVI – CONVERSION – PLAINTIFF FUN ART AGAINST ALL DEFENDANTS

416.    Plaintiff Fun Art repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

417.    At all times Plaintiff Fun Art had an interest and/or right to possession in their own funds and accounts, with those funds rightfully belonging to Plaintiff Fun Art in conjunction with its ownership and operation of its Hawaii Fluid Art Studios and franchised businesses.

418.    Defendant Franchisor and Defendant Ratcliff wrongfully took and possessed Plaintiff Fun Art's money, without authorization and for unauthorized purposes.

419.    In addition, Defendant Franchisor and Defendant Ratcliff wrongfully took and possessed Plaintiff Fun Art's money, without authorization and for unauthorized purposes, for uses unrelated to those prescribed in the Franchise Agreement, including but not limited to defraying costs and expenses of Defendants unrelated to fees and funds (i.e. Marketing, Technology) described in the Franchise Agreement and/or for the personal use of Defendant Ratcliff or other Defendants, with Defendants treating Plaintiff Fun Art's money as if it were their own.

420.    Plaintiff Fun Art has made demands on the Defendant Franchisor and Defendant Ratcliff personally for the return of their monies and property, but Defendants have refused the return of same.

421.    Upon information and belief, Defendant Ratcliff has caused such funds to be wrongfully conveyed, transferred, sold and/or assigned to one of the other Defendants, which Defendants Strong, HFAU, HFA Supply, HFAP, HFA Tech, HFA Spark, HFAM, and MT have similarly took, withheld and possessed without authorization and for unauthorized purposes, for uses unrelated to those prescribed in the Franchise Agreement, including but not limited to defraying costs and expenses of Defendants unrelated to fees and funds (i.e. Marketing, Technology) described in the Franchise Agreement and/or for the personal use of Defendant Ratcliff or other Defendants, with Defendants treating Plaintiff Fun Art's money as if were their own, and have refused to return said monies to Plaintiff despite repeated demands upon Defendant Ratcliff who controls all of the Defendant entities.

422.    By reason of the foregoing, Plaintiff Fun Art has sustained damages in an amount to be determined at trial, plus applicable interest, costs, and attorneys' fees.

COUNT XXXVII – CONVERSION – PLAINTIFF KKRK AGAINST ALL DEFENDANTS

423.    Plaintiff KKRK repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

424.    At all times Plaintiff KKRK had an interest and/or right to possession in their own funds and accounts, with those funds rightfully belonging to Plaintiff KKRK in conjunction with its ownership and operation of its Hawaii Fluid Art Studios and franchised businesses.

425.    Defendant Franchisor and Defendant Ratcliff wrongfully took and possessed Plaintiff KKRK's money, without authorization and for unauthorized purposes.

426.    In addition, Defendant Franchisor and Defendant Ratcliff wrongfully took and possessed Plaintiff KKRK's money, without authorization and for unauthorized purposes, for uses unrelated to those prescribed in the Franchise Agreement, including but not limited to defraying costs and expenses of Defendants unrelated to fees and funds (i.e. Marketing, Technology) described in the Franchise Agreement and/or for the personal use of Defendant Ratcliff or other Defendants, with Defendants treating Plaintiff KKRK's money as if it were their own.

427.    Plaintiff KKRK has made demands on the Defendant Franchisor and Defendant Ratcliff personally for the return of their monies and property, but Defendants have refused the return of same.

428.    Upon information and belief, Defendant Ratcliff has caused such funds to be wrongfully conveyed, transferred, sold and/or assigned to one of the other Defendants, which Defendants Strong, HFAU, HFA Supply, HFAP, HFA Tech, HFA Spark, HFAM, and MT have similarly took, withheld and possessed without authorization and for unauthorized purposes, for uses unrelated to those prescribed in the Franchise Agreement, including but not limited to

defraying costs and expenses of Defendants unrelated to fees and funds (i.e. Marketing, Technology) described in the Franchise Agreement and/or for the personal use of Defendant Ratcliff or other Defendants, with Defendants treating Plaintiff KKRK's money as if were their own, and have refused to return said monies to Plaintiff despite repeated demands upon Defendant Ratcliff who controls all of the Defendant entities.

429.    By reason of the foregoing, Plaintiff KKRK has sustained damages in an amount to be determined at trial, plus applicable interest, costs, and attorneys' fees.

<u>COUNT XXXVIII – CONVERSION – PLAINTIFF VICE ART</u>

<u>AGAINST ALL DEFENDANTS</u>

430.    Plaintiff Vice Art repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

431.    At all times Plaintiff Vice Art had an interest and/or right to possession in their own funds and accounts, with those funds rightfully belonging to Plaintiff Vice Art in conjunction with its ownership and operation of its Hawaii Fluid Art Studios and franchised businesses.

432.    Defendant Franchisor and Defendant Ratcliff wrongfully took and possessed Plaintiff Vice Art's money, without authorization and for unauthorized purposes.

433.    In addition, Defendant Franchisor and Defendant Ratcliff wrongfully took and possessed Plaintiff Vice Art's money, without authorization and for unauthorized purposes, for uses unrelated to those prescribed in the Franchise Agreement, including but not limited to defraying costs and expenses of Defendants unrelated to fees and funds (i.e. Marketing, Technology) described in the Franchise Agreement and/or for the personal use of Defendant Ratcliff or other Defendants, with Defendants treating Plaintiff Vice Art's money as if it were their own.

434.    Plaintiff Vice Art has made demands on the Defendant Franchisor and Defendant Ratcliff personally for the return of their monies and property, but Defendants have refused the return of same.

435.    Upon information and belief, Defendant Ratcliff has caused such funds to be wrongfully conveyed, transferred, sold and/or assigned to one of the other Defendants, which Defendants Strong, HFAU, HFA Supply, HFAP, HFA Tech, HFA Spark, HFAM, and MT have similarly took, withheld and possessed without authorization and for unauthorized purposes, for uses unrelated to those prescribed in the Franchise Agreement, including but not limited to defraying costs and expenses of Defendants unrelated to fees and funds (i.e. Marketing, Technology) described in the Franchise Agreement and/or for the personal use of Defendant Ratcliff or other Defendants, with Defendants treating Plaintiff Vice Art's money as if were their own, and have refused to return said monies to Plaintiff despite repeated demands upon Defendant Ratcliff who controls all of the Defendant entities.

436.    By reason of the foregoing, Plaintiff Vice Art has sustained damages in an amount to be determined at trial, plus applicable interest, costs, and attorneys' fees.

## COUNT XXXIX – CONVERSION – PLAINTIFF HFA GULF COAST
## AGAINST ALL DEFENDANTS

437.    Plaintiff HFA Gulf Coast repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

438.    At all times Plaintiff HFA Gulf Coast had an interest and/or right to possession in their own funds and accounts, with those funds rightfully belonging to Plaintiff HFA Gulf Coast in conjunction with its ownership and operation of its Hawaii Fluid Art Studios and franchised businesses.

439.    Defendant Franchisor and Defendant Ratcliff wrongfully took and possessed Plaintiff HFA Gulf Coast's money, without authorization and for unauthorized purposes.

440.    In addition, Defendant Franchisor and Defendant Ratcliff wrongfully took and possessed Plaintiff HFA Gulf Coast's money, without authorization and for unauthorized purposes, for uses unrelated to those prescribed in the Franchise Agreement, including but not limited to defraying costs and expenses of Defendants unrelated to fees and funds (i.e. Marketing, Technology) described in the Franchise Agreement and/or for the personal use of Defendant Ratcliff or other Defendants, with Defendants treating Plaintiff HFA Gulf Coast's money as if it were their own.

441.    Plaintiff HFA Gulf Coast has made demands on the Defendant Franchisor and Defendant Ratcliff personally for the return of their monies and property, but Defendants have refused the return of same.

442.    Upon information and belief, Defendant Ratcliff has caused such funds to be wrongfully conveyed, transferred, sold and/or assigned to one of the other Defendants, which Defendants Strong, HFAU, HFA Supply, HFAP, HFA Tech, HFA Spark, HFAM, and MT have similarly took, withheld and possessed without authorization and for unauthorized purposes, for uses unrelated to those prescribed in the Franchise Agreement, including but not limited to defraying costs and expenses of Defendants unrelated to fees and funds (i.e. Marketing, Technology) described in the Franchise Agreement and/or for the personal use of Defendant Ratcliff or other Defendants, with Defendants treating Plaintiff HFA Gulf Coast's money as if were their own, and have refused to return said monies to Plaintiff despite repeated demands upon Defendant Ratcliff who controls all of the Defendant entities.

443.    By reason of the foregoing, Plaintiff HFA Gulf Coast has sustained damages in an amount to be determined at trial, plus applicable interest, costs, and attorneys' fees.

<u>COUNT XL – CONVERSION – PLAINTIFF BOLTIMO AGAINST ALL DEFENDANTS</u>

444.    Plaintiff Boltimo repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

445.    At all times Plaintiff Boltimo had an interest and/or right to possession in their own funds and accounts, with those funds rightfully belonging to Plaintiff Boltimo in conjunction with its ownership and operation of its Hawaii Fluid Art Studios and franchised businesses.

446.    Defendant Franchisor and Defendant Ratcliff wrongfully took and possessed Plaintiff Boltimo's money, without authorization and for unauthorized purposes.

447.    In addition, Defendant Franchisor and Defendant Ratcliff wrongfully took and possessed Plaintiff Boltimo's money, without authorization and for unauthorized purposes, for uses unrelated to those prescribed in the Franchise Agreement, including but not limited to defraying costs and expenses of Defendants unrelated to fees and funds (i.e. Marketing, Technology) described in the Franchise Agreement and/or for the personal use of Defendant Ratcliff or other Defendants, with Defendants treating Plaintiff Boltimo's money as if it were their own.

448.    Plaintiff Boltimo has made demands on the Defendant Franchisor and Defendant Ratcliff personally for the return of their monies and property, but Defendants have refused the return of same.

449.    Upon information and belief, Defendant Ratcliff has caused such funds to be wrongfully conveyed, transferred, sold and/or assigned to one of the other Defendants, which Defendants Strong, HFAU, HFA Supply, HFAP, HFA Tech, HFA Spark, HFAM, and MT have similarly took, withheld and possessed without authorization and for unauthorized purposes, for uses unrelated to those prescribed in the Franchise Agreement, including but not limited to defraying costs and expenses of Defendants unrelated to fees and funds (i.e. Marketing,

Technology) described in the Franchise Agreement and/or for the personal use of Defendant Ratcliff or other Defendants, with Defendants treating Plaintiff Boltimo's money as if were their own, and have refused to return said monies to Plaintiff despite repeated demands upon Defendant Ratcliff who controls all of the Defendant entities.

450.    By reason of the foregoing, Plaintiff Boltimo has sustained damages in an amount to be determined at trial, plus applicable interest, costs, and attorneys' fees.

COUNT XLI – CONVERSION – PLAINTIFF DPC AGAINST ALL DEFENDANTS

451.    Plaintiff DPC repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

452.    At all times Plaintiff DPC had an interest and/or right to possession in their own funds and accounts, with those funds rightfully belonging to Plaintiff DPC in conjunction with its ownership and operation of its Hawaii Fluid Art Studios and franchised businesses.

453.    Defendant Franchisor and Defendant Ratcliff wrongfully took and possessed Plaintiff DPC's money, without authorization and for unauthorized purposes.

454.    In addition, Defendant Franchisor and Defendant Ratcliff wrongfully took and possessed Plaintiff DPC's money, without authorization and for unauthorized purposes, for uses unrelated to those prescribed in the Franchise Agreement, including but not limited to defraying costs and expenses of Defendants unrelated to fees and funds (i.e. Marketing, Technology) described in the Franchise Agreement and/or for the personal use of Defendant Ratcliff or other Defendants, with Defendants treating Plaintiff DPC's money as if it were their own.

455.    Plaintiff DPC has made demands on the Defendant Franchisor and Defendant Ratcliff personally for the return of their monies and property, but Defendants have refused the return of same.

456.    Upon information and belief, Defendant Ratcliff has caused such funds to be wrongfully conveyed, transferred, sold and/or assigned to one of the other Defendants, which Defendants Strong, HFAU, HFA Supply, HFAP, HFA Tech, HFA Spark, HFAM, and MT have similarly took, withheld and possessed without authorization and for unauthorized purposes, for uses unrelated to those prescribed in the Franchise Agreement, including but not limited to defraying costs and expenses of Defendants unrelated to fees and funds (i.e. Marketing, Technology) described in the Franchise Agreement and/or for the personal use of Defendant Ratcliff or other Defendants, with Defendants treating Plaintiff DPC's money as if were their own, and have refused to return said monies to Plaintiff despite repeated demands upon Defendant Ratcliff who controls all of the Defendant entities.

457.    By reason of the foregoing, Plaintiff DPC has sustained damages in an amount to be determined at trial, plus applicable interest, costs, and attorneys' fees.

COUNT XLII – CONVERSION – PLAINTIFF HALEIWA AGAINST ALL DEFENDANTS

458.    Plaintiff Haleiwa repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

459.    At all times Plaintiff Haleiwa had an interest and/or right to possession in their own funds and accounts, with those funds rightfully belonging to Plaintiff Haleiwa in conjunction with its ownership and operation of its Hawaii Fluid Art Studios and franchised businesses.

460.    Defendant Franchisor and Defendant Ratcliff wrongfully took and possessed Plaintiff Haleiwa's money, without authorization and for unauthorized purposes.

461.    In addition, Defendant Franchisor and Defendant Ratcliff wrongfully took and possessed Plaintiff Haleiwa's money, without authorization and for unauthorized purposes, for uses unrelated to those prescribed in the Franchise Agreement, including but not limited to defraying costs and expenses of Defendants unrelated to fees and funds (i.e. Marketing,

Technology) described in the Franchise Agreement and/or for the personal use of Defendant Ratcliff or other Defendants, with Defendants treating Plaintiff Haleiwa's money as if it were their own.

462.     Plaintiff Haleiwa has made demands on the Defendant Franchisor and Defendant Ratcliff personally for the return of their monies and property, but Defendants have refused the return of same.

463.     Upon information and belief, Defendant Ratcliff has caused such funds to be wrongfully conveyed, transferred, sold and/or assigned to one of the other Defendants, which Defendants Strong, HFAU, HFA Supply, HFAP, HFA Tech, HFA Spark, HFAM, and MT have similarly took, withheld and possessed without authorization and for unauthorized purposes, for uses unrelated to those prescribed in the Franchise Agreement, including but not limited to defraying costs and expenses of Defendants unrelated to fees and funds (i.e. Marketing, Technology) described in the Franchise Agreement and/or for the personal use of Defendant Ratcliff or other Defendants, with Defendants treating Plaintiff Haleiwa's money as if were their own, and have refused to return said monies to Plaintiff despite repeated demands upon Defendant Ratcliff who controls all of the Defendant entities.

464.     By reason of the foregoing, Plaintiff Haleiwa has sustained damages in an amount to be determined at trial, plus applicable interest, costs, and attorneys' fees.

COUNT XLIII – CONVERSION – PLAINTIFF BICENTENNIAL

AGAINST ALL DEFENDANTS

465.     Plaintiff Bicentennial repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

466.     At all times Plaintiff Bicentennial had an interest and/or right to possession in their own funds and accounts, with those funds rightfully belonging to Plaintiff Bicentennial in

conjunction with its ownership and operation of its Hawaii Fluid Art Studios and franchised businesses.

467.    Defendant Franchisor and Defendant Ratcliff wrongfully took and possessed Plaintiff Bicentennial's money, without authorization and for unauthorized purposes.

468.    In addition, Defendant Franchisor and Defendant Ratcliff wrongfully took and possessed Plaintiff Bicentennial's money, without authorization and for unauthorized purposes, for uses unrelated to those prescribed in the Franchise Agreement, including but not limited to defraying costs and expenses of Defendants unrelated to fees and funds (i.e. Marketing, Technology) described in the Franchise Agreement and/or for the personal use of Defendant Ratcliff or other Defendants, with Defendants treating Plaintiff Bicentennial's money as if it were their own.

469.    Plaintiff Bicentennial has made demands on the Defendant Franchisor and Defendant Ratcliff personally for the return of their monies and property, but Defendants have refused the return of same.

470.    Upon information and belief, Defendant Ratcliff has caused such funds to be wrongfully conveyed, transferred, sold and/or assigned to one of the other Defendants, which Defendants Strong, HFAU, HFA Supply, HFAP, HFA Tech, HFA Spark, HFAM, and MT have similarly took, withheld and possessed without authorization and for unauthorized purposes, for uses unrelated to those prescribed in the Franchise Agreement, including but not limited to defraying costs and expenses of Defendants unrelated to fees and funds (i.e. Marketing, Technology) described in the Franchise Agreement and/or for the personal use of Defendant Ratcliff or other Defendants, with Defendants treating Plaintiff Bicentennial's money as if were their own, and have refused to return said monies to Plaintiff despite repeated demands upon Defendant Ratcliff who controls all of the Defendant entities.

471.    By reason of the foregoing, Plaintiff Bicentennial has sustained damages in an amount to be determined at trial, plus applicable interest, costs, and attorneys' fees.

COUNT XLIV – CONVERSION – PLAINTIFF CANDLEBY AGAINST ALL DEFENDANTS

472.    Plaintiff Candleby repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

473.    At all times Plaintiff Candleby had an interest and/or right to possession in their own funds and accounts, with those funds rightfully belonging to Plaintiff Candleby in conjunction with its ownership and operation of its Hawaii Fluid Art Studios and franchised businesses.

474.    Defendant Franchisor and Defendant Ratcliff wrongfully took and possessed Plaintiff Candleby's money, without authorization and for unauthorized purposes.

475.    In addition, Defendant Franchisor and Defendant Ratcliff wrongfully took and possessed Plaintiff Candleby's money, without authorization and for unauthorized purposes, for uses unrelated to those prescribed in the Franchise Agreement, including but not limited to defraying costs and expenses of Defendants unrelated to fees and funds (i.e. Marketing, Technology) described in the Franchise Agreement and/or for the personal use of Defendant Ratcliff or other Defendants, with Defendants treating Plaintiff Candleby's money as if it were their own.

476.    Plaintiff Candleby has made demands on the Defendant Franchisor and Defendant Ratcliff personally for the return of their monies and property, but Defendants have refused the return of same.

477.    Upon information and belief, Defendant Ratcliff has caused such funds to be wrongfully conveyed, transferred, sold and/or assigned to one of the other Defendants, which Defendants Strong, HFAU, HFA Supply, HFAP, HFA Tech, HFA Spark, HFAM, and MT have similarly took, withheld and possessed without authorization and for unauthorized purposes, for

uses unrelated to those prescribed in the Franchise Agreement, including but not limited to defraying costs and expenses of Defendants unrelated to fees and funds (i.e. Marketing, Technology) described in the Franchise Agreement and/or for the personal use of Defendant Ratcliff or other Defendants, with Defendants treating Plaintiff Candleby's money as if were their own, and have refused to return said monies to Plaintiff despite repeated demands upon Defendant Ratcliff who controls all of the Defendant entities.

478.    By reason of the foregoing, Plaintiff Candleby has sustained damages in an amount to be determined at trial, plus applicable interest, costs, and attorneys' fees.

<u>COUNT XLV – CONVERSION – PLAINTIFF OHANA AGAINST ALL DEFENDANTS</u>

479.    Plaintiff Ohana repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

480.    At all times Plaintiff Ohana had an interest and/or right to possession in their own funds and accounts, with those funds rightfully belonging to Plaintiff Ohana in conjunction with its ownership and operation of its Hawaii Fluid Art Studios and franchised businesses.

481.    Defendant Franchisor and Defendant Ratcliff wrongfully took and possessed Plaintiff Ohana's money, without authorization and for unauthorized purposes.

482.    In addition, Defendant Franchisor and Defendant Ratcliff wrongfully took and possessed Plaintiff Ohana's money, without authorization and for unauthorized purposes, for uses unrelated to those prescribed in the Franchise Agreement, including but not limited to defraying costs and expenses of Defendants unrelated to fees and funds (i.e. Marketing, Technology) described in the Franchise Agreement and/or for the personal use of Defendant Ratcliff or other Defendants, with Defendants treating Plaintiff Ohana's money as if it were their own.

483.    Plaintiff Ohana has made demands on the Defendant Franchisor and Defendant Ratcliff personally for the return of their monies and property, but Defendants have refused the return of same.

484.    Upon information and belief, Defendant Ratcliff has caused such funds to be wrongfully conveyed, transferred, sold and/or assigned to one of the other Defendants, which Defendants Strong, HFAU, HFA Supply, HFAP, HFA Tech, HFA Spark, HFAM, and MT have similarly took, withheld and possessed without authorization and for unauthorized purposes, for uses unrelated to those prescribed in the Franchise Agreement, including but not limited to defraying costs and expenses of Defendants unrelated to fees and funds (i.e. Marketing, Technology) described in the Franchise Agreement and/or for the personal use of Defendant Ratcliff or other Defendants, with Defendants treating Plaintiff Ohana's money as if were their own, and have refused to return said monies to Plaintiff despite repeated demands upon Defendant Ratcliff who controls all of the Defendant entities.

485.    By reason of the foregoing, Plaintiff Ohana has sustained damages in an amount to be determined at trial, plus applicable interest, costs, and attorneys' fees.

<u>COUNT XLVI – CONVERSION – PLAINTIFF 3FIFTY AGAINST ALL DEFENDANTS</u>

486.    Plaintiff 3Fifty repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

487.    At all times Plaintiff 3Fifty had an interest and/or right to possession in their own funds and accounts, with those funds rightfully belonging to Plaintiff 3Fifty in conjunction with its ownership and operation of its Hawaii Fluid Art Studios and franchised businesses.

488.    Defendant Franchisor and Defendant Ratcliff wrongfully took and possessed Plaintiff 3Fifty's money, without authorization and for unauthorized purposes.

489.     In addition, Defendant Franchisor and Defendant Ratcliff wrongfully took and possessed Plaintiff 3Fifty's money, without authorization and for unauthorized purposes, for uses unrelated to those prescribed in the Franchise Agreement, including but not limited to defraying costs and expenses of Defendants unrelated to fees and funds (i.e. Marketing, Technology) described in the Franchise Agreement and/or for the personal use of Defendant Ratcliff or other Defendants, with Defendants treating Plaintiff 3Fifty's money as if it were their own.

490.     Plaintiff 3Fifty has made demands on the Defendant Franchisor and Defendant Ratcliff personally for the return of their monies and property, but Defendants have refused the return of same.

491.     Upon information and belief, Defendant Ratcliff has caused such funds to be wrongfully conveyed, transferred, sold and/or assigned to one of the other Defendants, which Defendants Strong, HFAU, HFA Supply, HFAP, HFA Tech, HFA Spark, HFAM, and MT have similarly took, withheld and possessed without authorization and for unauthorized purposes, for uses unrelated to those prescribed in the Franchise Agreement, including but not limited to defraying costs and expenses of Defendants unrelated to fees and funds (i.e. Marketing, Technology) described in the Franchise Agreement and/or for the personal use of Defendant Ratcliff or other Defendants, with Defendants treating Plaintiff 3Fifty's money as if were their own, and have refused to return said monies to Plaintiff despite repeated demands upon Defendant Ratcliff who controls all of the Defendant entities.

492.     By reason of the foregoing, Plaintiff 3Fifty has sustained damages in an amount to be determined at trial, plus applicable interest, costs, and attorneys' fees.

<u>COUNT XLVII – CONVERSION – PLAINTIFF WOLF MOON</u>

<u>AGAINST ALL DEFENDANTS</u>

493.    Plaintiff Wolf Moon repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

494.    At all times Plaintiff Wolf Moon had an interest and/or right to possession in their own funds and accounts, with those funds rightfully belonging to Plaintiff Wolf Moon in conjunction with its ownership and operation of its Hawaii Fluid Art Studios and franchised businesses.

495.    Defendant Franchisor and Defendant Ratcliff wrongfully took and possessed Plaintiff Wolf Moon's money, without authorization and for unauthorized purposes.

496.    In addition, Defendant Franchisor and Defendant Ratcliff wrongfully took and possessed Plaintiff Wolf Moon's money, without authorization and for unauthorized purposes, for uses unrelated to those prescribed in the Franchise Agreement, including but not limited to defraying costs and expenses of Defendants unrelated to fees and funds (i.e. Marketing, Technology) described in the Franchise Agreement and/or for the personal use of Defendant Ratcliff or other Defendants, with Defendants treating Plaintiff Wolf Moon's money as if it were their own.

497.    Plaintiff Wolf Moon has made demands on the Defendant Franchisor and Defendant Ratcliff personally for the return of their monies and property, but Defendants have refused the return of same.

498.    Upon information and belief, Defendant Ratcliff has caused such funds to be wrongfully conveyed, transferred, sold and/or assigned to one of the other Defendants, which Defendants Strong, HFAU, HFA Supply, HFAP, HFA Tech, HFA Spark, HFAM, and MT have similarly took, withheld and possessed without authorization and for unauthorized purposes, for uses unrelated to those prescribed in the Franchise Agreement, including but not limited to defraying costs and expenses of Defendants unrelated to fees and funds (i.e. Marketing,

Technology) described in the Franchise Agreement and/or for the personal use of Defendant Ratcliff or other Defendants, with Defendants treating Plaintiff Wolf Moon's money as if were their own, and have refused to return said monies to Plaintiff despite repeated demands upon Defendant Ratcliff who controls all of the Defendant entities.

499.    By reason of the foregoing, Plaintiff Wolf Moon has sustained damages in an amount to be determined at trial, plus applicable interest, costs, and attorneys' fees.

<u>COUNT XLVIII – CONVERSION – PLAINTIFF LAVA AGAINST ALL DEFENDANTS</u>

500.    Plaintiff Lava repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

501.    At all times Plaintiff Lava had an interest and/or right to possession in their own funds and accounts, with those funds rightfully belonging to Plaintiff Lava in conjunction with its ownership and operation of its Hawaii Fluid Art Studios and franchised businesses.

502.    Defendant Franchisor and Defendant Ratcliff wrongfully took and possessed Plaintiff Lava's money, without authorization and for unauthorized purposes.

503.    In addition, Defendant Franchisor and Defendant Ratcliff wrongfully took and possessed Plaintiff Lava's money, without authorization and for unauthorized purposes, for uses unrelated to those prescribed in the Franchise Agreement, including but not limited to defraying costs and expenses of Defendants unrelated to fees and funds (i.e. Marketing, Technology) described in the Franchise Agreement and/or for the personal use of Defendant Ratcliff or other Defendants, with Defendants treating Plaintiff Lava's money as if it were their own.

504.    Plaintiff Lava has made demands on the Defendant Franchisor and Defendant Ratcliff personally for the return of their monies and property, but Defendants have refused the return of same.

505.    Upon information and belief, Defendant Ratcliff has caused such funds to be wrongfully conveyed, transferred, sold and/or assigned to one of the other Defendants, which Defendants Strong, HFAU, HFA Supply, HFAP, HFA Tech, HFA Spark, HFAM, and MT have similarly took, withheld and possessed without authorization and for unauthorized purposes, for uses unrelated to those prescribed in the Franchise Agreement, including but not limited to defraying costs and expenses of Defendants unrelated to fees and funds (i.e. Marketing, Technology) described in the Franchise Agreement and/or for the personal use of Defendant Ratcliff or other Defendants, with Defendants treating Plaintiff Lava's money as if were their own, and have refused to return said monies to Plaintiff despite repeated demands upon Defendant Ratcliff who controls all of the Defendant entities.

506.    By reason of the foregoing, Plaintiff Lava has sustained damages in an amount to be determined at trial, plus applicable interest, costs, and attorneys' fees.

COUNT XLIX – CONVERSION – PLAINTIFF FOXKNOX AGAINST ALL DEFENDANTS

507.    Plaintiff FoxKnox repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

508.    At all times Plaintiff FoxKnox had an interest and/or right to possession in their own funds and accounts, with those funds rightfully belonging to Plaintiff FoxKnox in conjunction with its ownership and operation of its Hawaii Fluid Art Studios and franchised businesses.

509.    Defendant Franchisor and Defendant Ratcliff wrongfully took and possessed Plaintiff FoxKnox's money, without authorization and for unauthorized purposes.

510.    In addition, Defendant Franchisor and Defendant Ratcliff wrongfully took and possessed Plaintiff FoxKnox's money, without authorization and for unauthorized purposes, for uses unrelated to those prescribed in the Franchise Agreement, including but not limited to defraying costs and expenses of Defendants unrelated to fees and funds (i.e. Marketing,

Technology) described in the Franchise Agreement and/or for the personal use of Defendant Ratcliff or other Defendants, with Defendants treating Plaintiff FoxKnox's money as if it were their own.

511.    Plaintiff FoxKnox has made demands on the Defendant Franchisor and Defendant Ratcliff personally for the return of their monies and property, but Defendants have refused the return of same.

512.    Upon information and belief, Defendant Ratcliff has caused such funds to be wrongfully conveyed, transferred, sold and/or assigned to one of the other Defendants, which Defendants Strong, HFAU, HFA Supply, HFAP, HFA Tech, HFA Spark, HFAM, and MT have similarly took, withheld and possessed without authorization and for unauthorized purposes, for uses unrelated to those prescribed in the Franchise Agreement, including but not limited to defraying costs and expenses of Defendants unrelated to fees and funds (i.e. Marketing, Technology) described in the Franchise Agreement and/or for the personal use of Defendant Ratcliff or other Defendants, with Defendants treating Plaintiff FoxKnox's money as if were their own, and have refused to return said monies to Plaintiff despite repeated demands upon Defendant Ratcliff who controls all of the Defendant entities.

513.    By reason of the foregoing, Plaintiff FoxKnox has sustained damages in an amount to be determined at trial, plus applicable interest, costs, and attorneys' fees.

<u>COUNT L – CONVERSION – PLAINTIFF PATEL AGAINST ALL DEFENDANTS</u>

514.    Plaintiff Patel repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

515.    At all times Plaintiff Patel had an interest and/or right to possession in their own funds and accounts, with those funds rightfully belonging to Plaintiff Patel in conjunction with its ownership and operation of its Hawaii Fluid Art Studios and franchised businesses.

516.    Defendant Franchisor and Defendant Ratcliff wrongfully took and possessed Plaintiff Patel's money, without authorization and for unauthorized purposes.

517.    In addition, Defendant Franchisor and Defendant Ratcliff wrongfully took and possessed Plaintiff Patel's money, without authorization and for unauthorized purposes, for uses unrelated to those prescribed in the Franchise Agreement, including but not limited to defraying costs and expenses of Defendants unrelated to fees and funds (i.e. Marketing, Technology) described in the Franchise Agreement and/or for the personal use of Defendant Ratcliff or other Defendants, with Defendants treating Plaintiff Patel's money as if it were their own.

518.    Plaintiff Patel has made demands on the Defendant Franchisor and Defendant Ratcliff personally for the return of their monies and property, but Defendants have refused the return of same.

519.    Upon information and belief, Defendant Ratcliff has caused such funds to be wrongfully conveyed, transferred, sold and/or assigned to one of the other Defendants, which Defendants Strong, HFAU, HFA Supply, HFAP, HFA Tech, HFA Spark, HFAM, and MT have similarly took, withheld and possessed without authorization and for unauthorized purposes, for uses unrelated to those prescribed in the Franchise Agreement, including but not limited to defraying costs and expenses of Defendants unrelated to fees and funds (i.e. Marketing, Technology) described in the Franchise Agreement and/or for the personal use of Defendant Ratcliff or other Defendants, with Defendants treating Plaintiff Patel's money as if were their own, and have refused to return said monies to Plaintiff despite repeated demands upon Defendant Ratcliff who controls all of the Defendant entities.

520.    By reason of the foregoing, Plaintiff Patel has sustained damages in an amount to be determined at trial, plus applicable interest, costs, and attorneys' fees.

<u>COUNT LI – CONVERSION – PLAINTIFF ESK AGAINST ALL DEFENDANTS</u>

521.    Plaintiff ESK repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

522.    At all times Plaintiff ESK had an interest and/or right to possession in their own funds and accounts, with those funds rightfully belonging to Plaintiff ESK in conjunction with its ownership and operation of its Hawaii Fluid Art Studios and franchised businesses.

523.    Defendant Franchisor and Defendant Ratcliff wrongfully took and possessed Plaintiff ESK's money, without authorization and for unauthorized purposes.

524.    In addition, Defendant Franchisor and Defendant Ratcliff wrongfully took and possessed Plaintiff ESK's money, without authorization and for unauthorized purposes, for uses unrelated to those prescribed in the Franchise Agreement, including but not limited to defraying costs and expenses of Defendants unrelated to fees and funds (i.e. Marketing, Technology) described in the Franchise Agreement and/or for the personal use of Defendant Ratcliff or other Defendants, with Defendants treating Plaintiff ESK's money as if it were their own.

525.    Plaintiff ESK has made demands on the Defendant Franchisor and Defendant Ratcliff personally for the return of their monies and property, but Defendants have refused the return of same.

526.    Upon information and belief, Defendant Ratcliff has caused such funds to be wrongfully conveyed, transferred, sold and/or assigned to one of the other Defendants, which Defendants Strong, HFAU, HFA Supply, HFAP, HFA Tech, HFA Spark, HFAM, and MT have similarly took, withheld and possessed without authorization and for unauthorized purposes, for uses unrelated to those prescribed in the Franchise Agreement, including but not limited to defraying costs and expenses of Defendants unrelated to fees and funds (i.e. Marketing, Technology) described in the Franchise Agreement and/or for the personal use of Defendant Ratcliff or other Defendants, with Defendants treating Plaintiff ESK's money as if were their own,

and have refused to return said monies to Plaintiff despite repeated demands upon Defendant Ratcliff who controls all of the Defendant entities.

527.    By reason of the foregoing, Plaintiff ESK has sustained damages in an amount to be determined at trial, plus applicable interest, costs, and attorneys' fees.

<u>COUNT LII – UNJUST ENRICHMENT</u>

<u>ALL PLAINTIFFS AGAINST DEFENDANTS HFA, RATCLIFF, STRONG, HFAU, HFA SUPPLY, HFAP, HFA TECH, HFA SPARK, HFAM, and MT</u>

528.    All Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

529.    Plaintiffs conferred benefits on Defendants HFA, Ratcliff, Strong, HFAU, HFA SUPPLY, HFAP, HFA Tech, HFA Spark, HFAM, and MT as described herein, including the payment of fees and other amounts associated with the franchised businesses.

530.    Many of the services associated with said fees paid by Plaintiffs were never rendered by Defendants HFA, Ratcliff, Strong, HFAU, HFA SUPPLY, HFAP, HFA Tech, HFA Spark, HFAM, and MT.

531.    In addition, by paying supra-competitive prices for goods and services from mandatory vendors and by paying fees and other charges imposed by Franchisor and its affiliates which are not authorized by the Franchise Agreements, Plaintiffs conferred benefits upon Defendants HFA, Ratcliff, Strong, HFAU, HFA SUPPLY, HFAP, HFA Tech, HFA Spark, HFAM, and MT to which they were not entitled.

532.    Defendants HFA, Ratcliff, Strong, HFAU, HFA SUPPLY, HFAP, HFA Tech, HFA Spark, HFAM, and MT appreciated these benefits, including the financial gain.

533.    Defendant HFA, at a minimum, received a financial benefit for services not rendered.

534.     Defendants HFA, Ratcliff, Strong, HFAU, HFA SUPPLY, HFAP, HFA Tech, HFA Spark, HFAM, and MT have, therefore, received a benefit from Plaintiffs, the receipt of which constitutes unjust enrichment to Defendants HFA, Ratcliff, Strong, HFAU, HFA SUPPLY, HFAP, HFA Tech, HFA Spark, HFAM, and MT.

535.     Under the circumstances alleged in this Complaint, it would be inequitable for Defendants HFA, Ratcliff, Strong, HFAU, HFA SUPPLY, HFAP, HFA Tech, HFA Spark, HFAM, and MT to accept and retain these benefits without paying the value thereof.

536.     Accordingly, Defendants HFA, Ratcliff, Strong, HFAU, HFA SUPPLY, HFAP, HFA Tech, HFA Spark, HFAM, and MT were unjustly enriched and owe damages to Plaintiffs.

<u>COUNT LIII – COMMON LAW CONSPIRACY</u>

<u>ALL PLAINTIFFS AGAINST ALL DEFENDANTS</u>

537.     All Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

538.     Defendants, and others, known and unknown, have conspired to engage in a deceptive scheme, pursuant to which they have fraudulently induced Plaintiffs to purchase franchises when they knew that the representations and information concerning the system, unit economics, costs, expenses, profitability and other material factors were false and fraudulent.

539.     Defendants have engaged in this conspiracy as a means to extract substantial cash payments from unwitting franchisees by creating, instituting and perpetuating the deceptive conduct alleged in the Complaint.

540.     To perpetuate their conspiracy, as described throughout the Complaint, these Defendants made numerous false representations, an/or concealed material information regarding the franchise investment, which Plaintiffs relied on to their financial detriment.

541.    Defendants, by conspiring, have received millions of dollars in payments from Plaintiffs.

542.    As a direct result of the conspiracy, Plaintiffs have suffered direct, indirect and consequential damages.

<u>COUNT LIV – NEGLIGENT MISREPRESENTATION</u>

<u>ALL PLAINTIFFS AGAINST DEFENDANTS HFA, RATCLIFF AND KIRK</u>

543.    All Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

544.    Defendants HFA, Ratcliff and Kirk made materially false and misleading representations to Plaintiffs and concealed material facts from Plaintiffs in connection with the franchise opportunity.

545.    Defendants HFA, Ratcliff and Kirk knew or should have known of the falsity of the false and misleading representations made to Plaintiffs.

546.    Furthermore, Defendants HFA, Ratcliff and Kirk failed to make reasonable investigations of the truth and veracity of their representations.

547.    Defendants HFA, Ratcliff and Kirk misrepresentations and omissions were made with the intent to deceive and induce Plaintiffs to act.

548.    The misrepresentations and omissions were material to inducing Plaintiffs' reliance and execution of the Franchise Agreements.

549.    Plaintiffs sustained injury from justifiably relying on the misrepresentations and omissions of Defendants HFA, Ratcliff and Kirk.

550.    As a result of the misconduct described herein by Defendants HFA, Ratcliff and Kirk, Plaintiffs have suffered damages.

## COUNT LV – DECLARATORY JUDGMENT

## ALL PLAINTIFFS AGAINST DEFENDANT HFA

551.    Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

552.    Defendant HFA executed the alleged Franchise Agreements with the Plaintiffs.

553.    For reasons described herein, such Franchise Agreements were fraudulently induced and/or were materially breached by Defendant HFA.

554.    Therefore, Plaintiffs seek a declaration that such Franchise Agreements are invalid and that all terms therein are voided for fraud.

## COUNT LVI – VIOLATION OF THE ILLINOIS FRANCHISE DISCLOSURE ACT

## PLAINTIFF DGE AGAINST DEFENDANTS HFA, RATCLIFF AND KIRK

555.    Plaintiff DGE repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

556.    The Illinois Franchise Disclosure Act ("IFDA"), 815 ILCS 705/1 *et seq*. is a state law designed to protect prospective franchisees by ensuring they receive comprehensive information about a franchise opportunity before investing.

557.    The IFDA specifically applies to Plaintiff DGE herein.

558.    As described herein, Defendants HFA, Ratcliff and Kirk engaged in deception, provided false, misleading, inaccurate and incomplete disclosures, made false promises and misrepresentations, and omitted material facts in connection with the advertising, marketing and sale of the franchise to Plaintiff DGE.

559.    The conduct of Defendants HFA, Ratcliff and Kirk violates the IFDA and Defendants Ratcliff and Kirk actively participated and were direct participants in the fraudulent misconduct of Defendant HFA.

560.    As a result of the misconduct of Defendants HFA, Ratcliff and Kirk, Plaintiff DGE suffered damages.

561.    The actions of Defendants HFA, Ratcliff and Kirk were willful.

<u>COUNT LVI – VIOLATION OF THE ILLINOIS FRANCHISE DISCLOSURE ACT</u>

<u>PLAINTIFF DPC AGAINST DEFENDANTS HFA, RATCLIFF AND KIRK</u>

562.    Plaintiff DPC repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

563.    The Illinois Franchise Disclosure Act ("IFDA"), 815 ILCS 705/1 *et seq*. is a state law designed to protect prospective franchisees by ensuring they receive comprehensive information about a franchise opportunity before investing.

564.    The IFDA specifically applies to Plaintiff DPC herein.

565.    As described herein, Defendants HFA, Ratcliff and Kirk engaged in deception, provided false, misleading, inaccurate and incomplete disclosures, made false promises and misrepresentations, and omitted material facts in connection with the advertising, marketing and sale of the franchise to Plaintiff DPC.

566.    The conduct of Defendants HFA, Ratcliff and Kirk violates the IFDA and Defendants Ratcliff and Kirk actively participated and were direct participants in the fraudulent misconduct of Defendant HFA.

567.    As a result of the misconduct of Defendants HFA, Ratcliff and Kirk, Plaintiff DPC suffered damages.

568.    The actions of Defendants HFA, Ratcliff and Kirk were willful.

<u>COUNT LVI – VIOLATION OF THE ILLINOIS FRANCHISE DISCLOSURE ACT</u>

<u>PLAINTIFF PATEL AGAINST DEFENDANTS HFA AND RATCLIFF</u>

569.    Plaintiff Patel repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

570.    The Illinois Franchise Disclosure Act ("IFDA"), 815 ILCS 705/1 *et seq*. is a state law designed to protect prospective franchisees by ensuring they receive comprehensive information about a franchise opportunity before investing.

571.    The IFDA specifically applies to Plaintiff Patel herein.

572.    As described herein, Defendants HFA and Ratcliff engaged in deception, provided false, misleading, inaccurate and incomplete disclosures, made false promises and misrepresentations, and omitted material facts in connection with the advertising, marketing and sale of the franchise to Plaintiff Patel.

573.    The conduct of Defendants HFA and Ratcliff violates the IFDA and Defendant Ratcliff actively participated and was a direct participant in the fraudulent misconduct of Defendant HFA.

574.    As a result of the misconduct of Defendants HFA and Ratcliff, Plaintiff Patel suffered damages.

575.    The actions of Defendants HFA and Ratcliff were willful.

## COUNT LVII – VIOLATION OF THE ILLINOIS CONSUMER FRAUD  AND DECEPTIVE BUSINESS PRACTICES ACT

### PLAINTIFF DGE AGAINST DEFENDANTS HFA, RATCLIFF AND KIRK

576.    Plaintiff DGE repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

577.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFDBPA"), 815 ILCS 505/1 *et seq*. is a state law designed to protect Plaintiff DGE.

578.    The ICFDBPA specifically applies to Plaintiff DGE herein.

579.    As described herein, Defendants HFA, Ratcliff and Kirk engaged in deception, provided false, misleading, inaccurate and incomplete disclosures, made false promises and misrepresentations, and omitted material facts in connection with the advertising, marketing and sale of the franchise to Plaintiff DGE.

580.    The conduct of Defendants HFA, Ratcliff and Kirk violates the ICFDBPA and Defendants Ratcliff and Kirk actively participated and were direct participants in the fraudulent misconduct of Defendant HFA.

581.    As a result of the misconduct of Defendants HFA, Ratcliff and Kirk, Plaintiff DGE suffered damages.

582.    The actions of Defendants HFA, Ratcliff and Kirk were willful.

## COUNT LVIII – VIOLATION OF THE ILLINOIS CONSUMER FRAUD  AND DECEPTIVE BUSINESS PRACTICES ACT

### PLAINTIFF DPC AGAINST DEFENDANTS HFA, RATCLIFF AND KIRK

583.    Plaintiff DPC repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

584.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFDBPA"), 815 ILCS 505/1 *et seq*. is a state law designed to protect Plaintiff DPC.

585.    The ICFDBPA specifically applies to Plaintiff DPC herein.

586.    As described herein, Defendants HFA, Ratcliff and Kirk engaged in deception, provided false, misleading, inaccurate and incomplete disclosures, made false promises and misrepresentations, and omitted material facts in connection with the advertising, marketing and sale of the franchise to Plaintiff DPC.

587.    The conduct of Defendants HFA, Ratcliff and Kirk violates the ICFDBPA and Defendants Ratcliff and Kirk actively participated and were direct participants in the fraudulent misconduct of Defendant HFA.

588.    As a result of the misconduct of Defendants HFA, Ratcliff and Kirk, Plaintiff DPC suffered damages.

589.    The actions of Defendants HFA, Ratcliff and Kirk were willful.

## COUNT LIX – VIOLATION OF THE ILLINOIS CONSUMER FRAUD  AND DECEPTIVE BUSINESS PRACTICES ACT

### PLAINTIFF PATEL AGAINST DEFENDANTS HFA AND RATCLIFF

590.    Plaintiff Patel repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

591.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFDBPA"), 815 ILCS 505/1 *et seq*. is a state law designed to protect Plaintiff Patel.

592.    The ICFDBPA specifically applies to Plaintiff Patel herein.

593.    As described herein, Defendants HFA and Ratcliff engaged in deception, provided false, misleading, inaccurate and incomplete disclosures, made false promises and misrepresentations, and omitted material facts in connection with the advertising, marketing and sale of the franchise to Plaintiff Patel.

594.    The conduct of Defendants HFA and Ratcliff violates the ICFDBPA and Defendants Ratcliff actively participated and was a direct participant in the fraudulent misconduct of Defendant HFA.

595.    As a result of the misconduct of Defendants HFA and Ratcliff, Plaintiff Patel suffered damages.

596.    The actions of Defendants HFA and Ratcliff were willful.

<u>COUNT LX – VIOLATION OF THE ARIZONA CONSUMER FRAUD ACT</u>

<u>PLAINTIFF FOXKNOX AGAINST DEFENDANTS HFA, RATCLIFF AND KIRK</u>

597.    Plaintiff FoxKnox repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

598.    The Arizona Consumer Fraud Act ("ACFA"), Arizona Revised Statutes §44.1521 *et seq.* is a state law designed to protect Plaintiff FoxKnox.

599.    The ACFA specifically applies to Plaintiff FoxKnox herein.

600.    As described herein, Defendants HFA, Ratcliff and Kirk engaged in deception, provided false, misleading, inaccurate and incomplete disclosures, made false promises and misrepresentations, and omitted material facts in connection with the advertising, marketing and sale of the franchise to Plaintiff FoxKnox.

601.    The conduct of Defendants HFA, Ratcliff and Kirk violates the ACFA and Defendants Ratcliff and Kirk actively participated and were direct participants in the fraudulent misconduct of Defendant HFA.

602.    As a result of the misconduct of Defendants HFA, Ratcliff and Kirk, Plaintiff FoxKnox suffered damages.

603.    The actions of Defendants HFA, Ratcliff and Kirk were willful.

<u>COUNT LXI – VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES</u>

<u>AND CONSUMER PROTECTION LAW</u>

<u>PLAINTIFF FUN ART AGAINST DEFENDANTS HFA, RATCLIFF AND KIRK</u>

604.    Plaintiff Fun Art repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

605.    The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCPL"), 73 P.S. § §201-1 *et seq.* is a state law designed to protect Plaintiff Fun Art.

606.    The PUTPCPL specifically applies to Plaintiff Fun Art herein.

607.    As described herein, Defendants HFA, Ratcliff and Kirk engaged in deception, provided false, misleading, inaccurate and incomplete disclosures, made false promises and misrepresentations, and omitted material facts in connection with the advertising, marketing and sale of the franchise to Plaintiff Fun Art.

608.    The conduct of Defendants HFA, Ratcliff and Kirk violates the PUTPCPL and Defendants Ratcliff and Kirk actively participated and were direct participants in the fraudulent misconduct of Defendant HFA.

609.    As a result of the misconduct of Defendants HFA, Ratcliff and Kirk, Plaintiff Fun Art suffered damages.

610.    The actions of Defendants HFA, Ratcliff and Kirk were willful.

## COUNT LXII – VIOLATION OF THE OKLAHOMA CONSUMER PROTECTION ACT
### PLAINTIFF KKRK AGAINST DEFENDANTS HFA AND RATCLIFF

611.    Plaintiff KKRK repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

612.    The Oklahoma Consumer Protection Act, 15 O.S. § 751 *et seq.* ("OCPA") is a state law designed to protect Plaintiff KKRK.

613.    The OCPA specifically applies to Plaintiff KKRK herein.

614.    As described herein, Defendants HFA and Ratcliff engaged in deception, provided false, misleading, inaccurate and incomplete disclosures, made false promises and misrepresentations, and omitted material facts in connection with the advertising, marketing and sale of the franchise to Plaintiff KKRK.

615.    The conduct of Defendants HFA and Ratcliff violates the OCPA and Defendant Ratcliff actively participated and was a direct participant in the fraudulent misconduct of Defendant HFA.

616.    As a result of the misconduct of Defendants HFA and Ratcliff, Plaintiff KKRK suffered damages.

617.    The actions of Defendants HFA and Ratcliff were willful.

## COUNT LXIII – VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

### PLAINTIFF VICE ART AGAINST DEFENDANTS HFA, RATCLIFF AND KIRK

618.    Plaintiff Vice Art repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

619.    The Florida Deceptive and Unfair Trade Practices Act, Florida Statutes Chapter 501, Part II, Section 501.201 *et seq.* ("FDUTPA") is a state law designed to protect Plaintiff Vice Art.

620.    The FDUTPA specifically applies to Plaintiff Vice Art herein.

621.    As described herein, Defendants HFA, Ratcliff and Kirk engaged in deception, provided false, misleading, inaccurate and incomplete disclosures, made false promises and misrepresentations, and omitted material facts in connection with the advertising, marketing and sale of the franchise to Plaintiff Vice Art.

622.    The conduct of Defendants HFA, Ratcliff and Kirk violates the FDUTPA and Defendants Ratcliff and Kirk actively participated and were direct participants in the fraudulent misconduct of Defendant HFA.

623.    As a result of the misconduct of Defendants HFA, Ratcliff and Kirk, Plaintiff Vice Art suffered damages.

624.    The actions of Defendants HFA, Ratcliff and Kirk were willful.

COUNT LXIV – VIOLATION OF THE ALABAMA DECEPTIVE TRADE PRACTICES ACT

PLAINTIFF HFA GULF COAST AGAINST DEFENDANTS HFA, RATCLIFF AND KIRK

625.    Plaintiff HFA Gulf Coast repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

626.    The Alabama Deceptive Trade Practices Act, Alabama Code Title 8, Chapter 19, Sections 8-19-1 through 8-19-15 ("ADTPA") is a state law designed to protect Plaintiff Vice Art.

627.    The ADPTA specifically applies to Plaintiff HFA Gulf Coast herein.

628.    As described herein, Defendants HFA, Ratcliff and Kirk engaged in deception, provided false, misleading, inaccurate and incomplete disclosures, made false promises and misrepresentations, and omitted material facts in connection with the advertising, marketing and sale of the franchise to Plaintiff HFA Gulf Coast.

629.    The conduct of Defendants HFA, Ratcliff and Kirk violates the ADTPA and Defendants Ratcliff and Kirk actively participated and were direct participants in the fraudulent misconduct of Defendant HFA.

630.    As a result of the misconduct of Defendants HFA, Ratcliff and Kirk, Plaintiff Vice Art suffered damages.

631.    The actions of Defendants HFA, Ratcliff and Kirk were willful.

COUNT LXV – VIOLATION OF THE MICHIGAN FRANCHISE INVESTMENT LAW

BOLTIMO CORPORATION AGAINST DEFENDANTS HFA, RATCLIFF AND KIRK

632.    Plaintiff Boltimo repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

633.    At all relevant times there was in full force and effect a statute commonly known as the Michigan Franchise Investment Law, at MCL §§445.1501-1546 (the "MFIL").

634.    The MFIL specifically applies to Plaintiff Boltimo herein.

635.    As described herein, Defendants HFA, Ratcliff and Kirk engaged in deception, provided false, misleading, inaccurate and incomplete disclosures, made false promises and misrepresentations, and omitted material facts in connection with the advertising, marketing and sale of the franchise to Plaintiff Boltimo. Defendants HFA, Ratcliff and Kirk employed a device, scheme, or artifice to defraud Plaintiff Boltimo.   Defendants HFA, Ratcliff and Kirk engaged in acts, practices, or a course of business which operates as a fraud or deceit upon Plaintiff Boltimo.

636.    The conduct of Defendants HFA, Ratcliff and Kirk violates the MFIL and Defendants Ratcliff and Kirk actively participated and were direct participants in the fraudulent misconduct of Defendant HFA.

637.    As a result of the misconduct of Defendants HFA, Ratcliff and Kirk, Plaintiff Boltimo suffered damages.

638.    The actions of Defendants HFA, Ratcliff and Kirk were willful.

639.    The above-described intentional misrepresentations and intentional concealment of material facts were made by Defendants HFA, Ratcliff and Kirk to Plaintiff Boltimo for the purpose of inducing said Plaintiff Boltimo to enter into the Franchise Agreement.

640.    Plaintiff Boltimo relied upon Defendant HFA, Ratcliff and Kirk's material misrepresentations and concealments to its detriment by entering into the Franchise Agreement, and by investing a significant amount of time and money in the franchised business acquired from said Defendants.

641.    As a result of Defendant Franchisor's violation(s) of the MFIL, Plaintiff Boltimo has suffered damages.

642.    Pursuant to Michigan Statute §445.1531, Plaintiff Boltimo is entitled to rescission or damages against Defendants HFA, Ratcliff and Kirk as a result of their violations of the MFIL

and Plaintiff Boltimo is entitled to recover reasonable attorneys' fees and costs incurred in bringing this action.

<u>COUNT LXVI – VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT</u>

<u>PLAINTIFF BOLTIMO AGAINST DEFENDANTS HFA, RATCLIFF AND KIRK</u>

643.    Plaintiff Boltimo repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

644.    The Michigan Consumer Protection Act, Michigan Compiled Laws, §445.903 *et seq.* ("OCPA") is a state law designed to protect Plaintiff Boltimo.

645.    The MCPA specifically applies to Plaintiff Boltimo herein.

646.    As described herein, Defendants HFA, Ratcliff and Kirk engaged in deception, provided false, misleading, inaccurate and incomplete disclosures, made false promises and misrepresentations, and omitted material facts in connection with the advertising, marketing and sale of the franchise to Plaintiff Boltimo.

647.    The conduct of Defendants HFA, Ratcliff and Kirk violates the MCPA and Defendants Ratcliff and Kirk actively participated and were direct participants in the fraudulent misconduct of Defendant HFA.

648.    As a result of the misconduct of Defendants HFA, Ratcliff and Kirk, Plaintiff Boltimo suffered damages.

649.    The actions of Defendants HFA, Ratcliff and Kirk were willful.

<u>COUNT LXVII – VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT</u>

<u>PLAINTIFF HALEIWA AGAINST DEFENDANTS HFA, RATCLIFF AND KIRK</u>

650.    Plaintiff Haleiwa repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

651.    The Tennessee Consumer Protection Act, 2024 Tennessee Code, §47-1-101 *et seq.* ("TCPA") is a state law designed to protect Plaintiff Haleiwa.

652.    The TCPA specifically applies to Plaintiff Haleiwa herein.

653.    As described herein, Defendants HFA, Ratcliff and Kirk engaged in deception, provided false, misleading, inaccurate and incomplete disclosures, made false promises and misrepresentations, and omitted material facts in connection with the advertising, marketing and sale of the franchise to Plaintiff Haleiwa.

654.    The conduct of Defendants HFA, Ratcliff and Kirk violates the TCPA and Defendants Ratcliff and Kirk actively participated and were direct participants in the fraudulent misconduct of Defendant HFA.

655.    As a result of the misconduct of Defendants HFA, Ratcliff and Kirk, Plaintiff Haleiwa suffered damages.

656.    The actions of Defendants HFA, Ratcliff and Kirk were willful.

<u>COUNT LXVIII – VIOLATION OF THE COLORADO CONSUMER PROTECTION ACT</u>

<u>PLAINTIFF BICENTENNIAL AGAINST DEFENDANTS HFA, RATCLIFF AND KIRK</u>

657.    Plaintiff Bicentennial repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

658.    The Colorado Consumer Protection Act, Colorado Revised Statutes (C.R.S.), C.R.S. § 6-1-101 *et seq.* ("CCPA") is a state law designed to protect Plaintiff Bicentennial.

659.    The CCPA specifically applies to Plaintiff Bicentennial herein.

660.    As described herein, Defendants HFA, Ratcliff and Kirk engaged in deception, provided false, misleading, inaccurate and incomplete disclosures, made false promises and misrepresentations, and omitted material facts in connection with the advertising, marketing and sale of the franchise to Plaintiff Bicentennial.

661.    The conduct of Defendants HFA, Ratcliff and Kirk violates the CCPA and Defendants Ratcliff and Kirk actively participated and were direct participants in the fraudulent misconduct of Defendant HFA.

662.    As a result of the misconduct of Defendants HFA, Ratcliff and Kirk, Plaintiff Bicentennial suffered damages.

663.    The actions of Defendants HFA, Ratcliff and Kirk were willful.

COUNT LXVIII – VIOLATION OF THE COLORADO CONSUMER PROTECTION ACT
PLAINTIFF WOLF MOON AGAINST DEFENDANTS HFA, RATCLIFF AND KIRK

664.    Plaintiff Wolf Moon repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

665.    The Colorado Consumer Protection Act, Colorado Revised Statutes (C.R.S.), C.R.S. § 6-1-101 *et seq.* ("CCPA") is a state law designed to protect Plaintiff Wolf Moon.

666.    The CCPA specifically applies to Plaintiff Wolf Moon herein.

667.    As described herein, Defendants HFA, Ratcliff and Kirk engaged in deception, provided false, misleading, inaccurate and incomplete disclosures, made false promises and misrepresentations, and omitted material facts in connection with the advertising, marketing and sale of the franchise to Plaintiff Wolf Moon.

668.    The conduct of Defendants HFA, Ratcliff and Kirk violates the CCPA and Defendants Ratcliff and Kirk actively participated and were direct participants in the fraudulent misconduct of Defendant HFA.

669.    As a result of the misconduct of Defendants HFA, Ratcliff and Kirk, Plaintiff Wolf Moon suffered damages.

670.    The actions of Defendants HFA, Ratcliff and Kirk were willful.

COUNT LXIX – VIOLATION OF THE MISSOURI CONSUMER PROTECTION ACT

PLAINTIFF LAVA AGAINST DEFENDANTS HFA, RATCLIFF AND KIRK

671.    Plaintiff Lava repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

672.    The Missouri Merchandising Practices Act, Revised Statutes of Missouri (RSMo) § 407.010-407.190 *et seq*. ("MMPA") is a state law designed to protect Plaintiff Lava Creek.

673.    The MMPA specifically applies to Plaintiff Lava herein.

674.    As described herein, Defendants HFA, Ratcliff and Kirk engaged in deception, provided false, misleading, inaccurate and incomplete disclosures, made false promises and misrepresentations, and omitted material facts in connection with the advertising, marketing and sale of the franchise to Plaintiff Lava Creek.

675.    The conduct of Defendants HFA, Ratcliff and Kirk violates the MMPA and Defendants Ratcliff and Kirk actively participated and were direct participants in the fraudulent misconduct of Defendant HFA.

676.    As a result of the misconduct of Defendants HFA, Ratcliff and Kirk, Plaintiff Lava suffered damages.

677.    The actions of Defendants HFA, Ratcliff and Kirk were willful.

COUNT LXX – VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT

PLAINTIFF CANDLEBY AGAINST DEFENDANTS HFA, RATCLIFF AND KIRK

678.    Plaintiff Candleby repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

679.    The Indiana Deceptive Consumer Sales Act, Indiana Code § 24-5-0.5-1 *et seq*. ("IDCSA") is a state law designed to protect Plaintiff Candleby.

680.    The IDCSA specifically applies to Plaintiff Candleby herein.

681.    As described herein, Defendants HFA, Ratcliff and Kirk engaged in deception, provided false, misleading, inaccurate and incomplete disclosures, made false promises and misrepresentations, and omitted material facts in connection with the advertising, marketing and sale of the franchise to Plaintiff Candleby.

682.    The conduct of Defendants HFA, Ratcliff and Kirk violates the IDCSA and Defendants Ratcliff and Kirk actively participated and were direct participants in the fraudulent misconduct of Defendant HFA.

683.    As a result of the misconduct of Defendants HFA, Ratcliff and Kirk, Plaintiff Candleby suffered damages.

684.    The actions of Defendants HFA, Ratcliff and Kirk were willful.

## COUNT LXXI – VIOLATION OF THE INDIANA DECEPTIVE FRANCHISE PRACTICES ACT

### PLAINTIFF CANDLEBY AGAINST DEFENDANTS HFA, RATCLIFF AND KIRK

685.    Plaintiff Candleby repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

686.    The Indiana Deceptive Franchise Practices Act, Indiana Code § 23-2-2.7 *et seq.* ("IDFPA") is a state law designed to protect Plaintiff Candleby.

687.    The IDFPA specifically applies to Plaintiff Candleby herein.

688.    As described herein, Defendants HFA, Ratcliff and Kirk engaged in deception, provided false, misleading, inaccurate and incomplete disclosures, made false promises and misrepresentations, and omitted material facts in connection with the advertising, marketing and sale of the franchise to Plaintiff Candleby.

689.    The conduct of Defendants HFA, Ratcliff and Kirk violates the IDFPA and Defendants Ratcliff and Kirk materially aided and abetted the fraudulent misconduct of Defendant

HFA, and Defendants Ratcliff and Kirk actively participated and were direct participants in the fraudulent misconduct of Defendant HFA.

690.    As a result of the misconduct of Defendants HFA, Ratcliff and Kirk, Plaintiff Candleby suffered damages.

691.    The actions of Defendants HFA, Ratcliff and Kirk were willful.

## COUNT LXXII – VIOLATION OF THE SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT

### PLAINTIFF OHANA AGAINST DEFENDANTS HFA, RATCLIFF AND KIRK

692.    Plaintiff Ohana repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

693.    The South Carolina Unfair Trade Practices Act ("SCUTPA"), South Carolina Code of Laws, Title 39, Chapter 5, *et seq.* is a state law designed to protect Plaintiff Ohana.

694.    The SCUTPA specifically applies to Plaintiff Ohana herein.

695.    As described herein, Defendants HFA, Ratcliff and Kirk engaged in deception, provided false, misleading, inaccurate and incomplete disclosures, made false promises and misrepresentations, and omitted material facts in connection with the advertising, marketing and sale of the franchise to Plaintiff Ohana.

696.    The conduct of Defendants HFA, Ratcliff and Kirk violates the SCUTPA and Defendants Ratcliff and Kirk actively participated and were direct participants in the fraudulent misconduct of Defendant HFA.

697.    As a result of the misconduct of Defendants HFA, Ratcliff and Kirk, Plaintiff Ohana suffered damages.

698.    The actions of Defendants HFA, Ratcliff and Kirk were willful.

## COUNT LXXIII – VIOLATION OF THE SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT

### PLAINTIFF ESK AGAINST DEFENDANTS HFA, RATCLIFF AND KIRK

699.    Plaintiff ESK repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

700.    The South Carolina Unfair Trade Practices Act ("SCUTPA"), South Carolina Code of Laws, Title 39, Chapter 5, *et seq.* is a state law designed to protect Plaintiff ESK.

701.    The SCUTPA specifically applies to Plaintiff ESK herein.

702.    As described herein, Defendants HFA, Ratcliff and Kirk engaged in deception, provided false, misleading, inaccurate and incomplete disclosures, made false promises and misrepresentations, and omitted material facts in connection with the advertising, marketing and sale of the franchise to Plaintiff ESK.

703.    The conduct of Defendants HFA, Ratcliff and Kirk violates the SCUTPA and Defendants Ratcliff and Kirk actively participated and were direct participants in the fraudulent misconduct of Defendant HFA.

704.    As a result of the misconduct of Defendants HFA, Ratcliff and Kirk, Plaintiff ESK suffered damages.

705.    The actions of Defendants HFA, Ratcliff and Kirk were willful.

### COUNT LXXIV – VIOLATION OF THE VIRGINIA RETAIL FRANCHISE ACT

### PLAINTIFF 3FIFTY AGAINST DEFENDANTS HFA, RATCLIFF AND KIRK

706.    Plaintiff 3Fifty repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

707.    The Virginia Retail Franchising Act, Title 13.1, Chapter 8 of the Code of Virginia, § 13.1-557 *et seq.* ("VRFA") is a state law designed to protect Plaintiff 3Fifty.

708.    The VRFA specifically applies to Plaintiff 3Fifty herein.

709.    As described herein, Defendants HFA, Ratcliff and Kirk engaged in deception, provided false, misleading, inaccurate and incomplete disclosures, made false promises and misrepresentations, and omitted material facts in connection with the advertising, marketing and sale of the franchise to Plaintiff 3Fifty.

710.    The conduct of Defendants HFA, Ratcliff and Kirk violates the VRFA and Defendants Ratcliff and Kirk actively participated and were direct participants in the fraudulent misconduct of Defendant HFA.

711.    As a result of the misconduct of Defendants HFA, Ratcliff and Kirk, Plaintiff 3Fifty suffered damages.

712.    The actions of Defendants HFA, Ratcliff and Kirk were willful.

## COUNT LXXV – VIOLATION OF THE VIRGINIA UNFAIR TRADE PRACTICES ACT
## PLAINTIFF 3FIFTY AGAINST DEFENDANTS HFA, RATCLIFF AND KIRK

713.    Plaintiff 3Fifty repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

714.    The Virginia Unfair Trade Practices Act, Title 38.2, Chapter 5 of the Code of Virginia, § 38.2-500 *et seq.* ("VUTPA") is a state law designed to protect Plaintiff 3Fifty.

715.    The VUTPA specifically applies to Plaintiff 3Fifty herein.

716.    As described herein, Defendants HFA, Ratcliff and Kirk engaged in deception, provided false, misleading, inaccurate and incomplete disclosures, made false promises and misrepresentations, and omitted material facts in connection with the advertising, marketing and sale of the franchise to Plaintiff 3Fifty.

717. The conduct of Defendants HFA, Ratcliff and Kirk violates the VUTPA and Defendants Ratcliff and Kirk actively participated and were direct participants in the fraudulent misconduct of Defendant HFA.

718. As a result of the misconduct of Defendants HFA, Ratcliff and Kirk, Plaintiff 3Fifty suffered damages.

719. The actions of Defendants HFA, Ratcliff and Kirk were willful.

<u>COUNT LXXVI – VIOLATION OF OKLAHOMA BUSINESS OPPORTUNITY SALES ACT</u>

<u>PLAINTIFF KKRK AGAINST DEFENDANTS HFA AND RATCLIFF</u>

720. Plaintiff KKRK repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

721. The Oklahoma Business Opportunity Sales Act, Oklahoma Statutes Title 71, Sections 801 through 829, 71 Okl.St.Ann. § 801-829) ("OBOSA") is a state law designed to protect Plaintiff KKRK.

722. The OBOSA specifically applies to Plaintiff KKRK herein.

723. As described herein, Defendants HFA and Ratcliff engaged in deception, provided false, misleading, inaccurate and incomplete disclosures, made false promises and misrepresentations, and omitted material facts in connection with the advertising, marketing and sale of the franchise to Plaintiff KKRK.

724. The conduct of Defendants HFA and Ratcliff violates the OBOSA and Defendant Ratcliff actively participated and was a direct participant in the fraudulent misconduct of Defendant HFA.

725. As a result of the misconduct of Defendants HFA and Ratcliff, Plaintiff KKRK suffered damages.

726. The actions of Defendants HFA and Ratcliff were willful.

COUNT LXXVII – VIOLATION OF THE ALABAMA BUSINESS OPPORTUNITY ACT

PLAINTIFF HFA GULF COAST AGAINST DEFENDANTS HFA, RATCLIFF AND KIRK

727.    Plaintiff HFA Gulf Coast repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

728.    The Alabama Business Opportunity Act, Code of Alabama Title 8, Chapter 19A, Sections 8-19A-1 through 8-19A-20 ("ABOA") is a state law designed to protect Plaintiff HFA Gulf Coast.

729.    The ABOA specifically applies to Plaintiff HFA Gulf Coast herein.

730.    As described herein, Defendants HFA, Ratcliff and Kirk engaged in deception, provided false, misleading, inaccurate and incomplete disclosures, made false promises and misrepresentations, and omitted material facts in connection with the advertising, marketing and sale of the franchise to Plaintiff HFA Gulf Coast.

731.    The conduct of Defendants HFA, Ratcliff and Kirk violates the ABOA and Defendants Ratcliff and Kirk actively participated and were direct participants in the fraudulent misconduct of Defendant HFA.

732.    As a result of the misconduct of Defendants HFA, Ratcliff and Kirk, Plaintiff HFA Gulf Coast suffered damages.

733.    The actions of Defendants HFA, Ratcliff and Kirk were willful.

COUNT LXXVIII – VIOLATION OF THE FLORIDA SALE OF BUSINESS

OPPORTUNITIES ACT

PLAINTIFF VICE ART AGAINST DEFENDANTS HFA, RATCLIFF AND KIRK

734.    Plaintiff Vice Art repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

735.    The Florida Sale of Business Opportunities Act, Fla. Stat. §559.80 *et seq.* ("FSBOA") is a state law designed to protect Plaintiff Vice Art.

736.    The FSBOA specifically applies to Plaintiff Vice Art herein.

737.    As described herein, Defendants HFA, Ratcliff and Kirk engaged in deception, provided false, misleading, inaccurate and incomplete disclosures, made false promises and misrepresentations, and omitted material facts in connection with the advertising, marketing and sale of the franchise to Plaintiff Vice Art.

738.    The conduct of Defendants HFA, Ratcliff and Kirk violates the FSBOA and Defendants Ratcliff and Kirk actively participated and were direct participants in the fraudulent misconduct of Defendant HFA.

739.    As a result of the misconduct of Defendants HFA, Ratcliff and Kirk, Plaintiff Vice Art suffered damages.

740.    The actions of Defendants HFA, Ratcliff and Kirk were willful.

## COUNT LXXIX – VIOLATION OF THE SOUTH CAROLINA BUSINESS OPPORTUNITY LAW

### PLAINTIFF OHANA AGAINST DEFENDANTS HFA, RATCLIFF AND KIRK

741.    Plaintiff Ohana repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

742.    The South Carolina Business Opportunity Law, S.C. Code §§ 39-57-10 *et seq.* ("SCBOL") is a state law designed to protect Plaintiff Ohana.

743.    The SCBOL specifically applies to Plaintiff Ohana herein.

744.    As described herein, Defendants HFA, Ratcliff and Kirk engaged in deception, provided false, misleading, inaccurate and incomplete disclosures, made false promises and

misrepresentations, and omitted material facts in connection with the advertising, marketing and sale of the franchise to Plaintiff Ohana.

745.    The conduct of Defendants HFA, Ratcliff and Kirk violates the SCBOL and Defendants Ratcliff and Kirk actively participated and were direct participants in the fraudulent misconduct of Defendant HFA.

746.    As a result of the misconduct of Defendants HFA, Ratcliff and Kirk, Plaintiff Ohana suffered damages.

747.    The actions of Defendants HFA, Ratcliff and Kirk were willful.

<u>COUNT LXXX – VIOLATION OF THE SOUTH CAROLINA BUSINESS OPPORTUNITY LAW</u>

<u>PLAINTIFF ESK AGAINST DEFENDANTS HFA, RATCLIFF AND KIRK</u>

748.    Plaintiff ESK repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

749.    The South Carolina Business Opportunity Law, S.C. Code §§ 39-57-10 *et seq.* ("SCBOL") is a state law designed to protect Plaintiff ESK.

750.    The SCBOL specifically applies to Plaintiff ESK herein.

751.    As described herein, Defendants HFA, Ratcliff and Kirk engaged in deception, provided false, misleading, inaccurate and incomplete disclosures, made false promises and misrepresentations, and omitted material facts in connection with the advertising, marketing and sale of the franchise to Plaintiff ESK.

752.    The conduct of Defendants HFA, Ratcliff and Kirk violates the SCBOL and Defendants Ratcliff and Kirk actively participated and were direct participants in the fraudulent misconduct of Defendant HFA.

753.    As a result of the misconduct of Defendants HFA, Ratcliff and Kirk, Plaintiff ESK suffered damages.

754.    The actions of Defendants HFA, Ratcliff and Kirk were willful.

COUNT LXXXI – PIERCING THE CORPORATE VEIL

ALL PLAINTIFFS AGAINST DEFENDANT RATCLIFF

755.    Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

756.    Upon information and belief, Defendants HFA, Strong, HFAU, HFA Supply, HFAP, HFA Tech, HFA Spark, HFAM, and MT are all merely alter-egos of the sole member of each, Defendant Ratcliff.

757.    Upon information and belief, Defendants HFA, Strong, HFAU, HFA Supply, HFAP, HFA Tech, HFA Spark, HFAM, and MT are each and all mere instrumentalities of their sole Member, Defendant Ratcliff.

758.    Through her fraudulent representations, breaches of the Franchise Agreements, and violations of state and federal statutory law and regulations, Defendant Ratcliff has committed wrongdoings against Plaintiffs.

759.    As a result of the wrongdoings of Defendant Ratcliff, Plaintiffs have been unjustly injured and suffered damages in an amount to be determined at trial.

760.    As Defendants HFA, Strong, HFAU, HFA Supply, HFAP, HFA Tech, HFA Spark, HFAM, and MT are each and all mere instrumentalities of their sole Member, Defendant Ratcliff, she should be held personally liable for the damages suffered by Plaintiffs.

COUNT LXXXII – SPOLIATION OF EVIDENCE

ALL PLAINTIFFS AGAINST ALL DEFENDANTS

761. Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full herein.

762. Plaintiffs reasonably anticipated litigation with Defendants arising out of the events described in this Complaint.

763. Defendants had actual knowledge, or reasonably should have known, that certain documents, electronically stored information ("ESI"), records, and/or tangible evidence were relevant to the claims and defenses in this litigation and that Plaintiffs would need such evidence to prove their claims.

764. Despite this duty to preserve relevant evidence, Defendants intentionally and/or negligently destroyed, altered, concealed, or failed to preserve such evidence, including but not limited to: business records, accounting records, records of payments, contractual agreements and other documentation relating to the Plaintiffs.

765. Defendants' acts of spoliation were undertaken in bad faith and/or with reckless disregard for Plaintiffs' rights and directly interfered with Plaintiffs' ability to prove their claims.

766. As a direct and proximate result of Defendants' spoliation of evidence, Plaintiffs have suffered actual prejudice, including but not limited to the loss of critical proof, impairment of Plaintiffs' ability to present their case, increased litigation costs, and other damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, for the reasons stated herein and based on the evidence adduced at the trial, each of the following Plaintiffs, DGE INVESTMENTS, INC., an Illinois corporation, FUN ART PARTIES, LLC, a Pennsylvania limited liability company, KKRK, LLC, an Oklahoma limited liability company, VICE FLUID ART, INC., a Florida corporation, HAWAII FLUID ART GULF COAST, LLC, an Alabama limited liability company, BOLTIMO CORPORATION, a Michigan

corporation, DP CREATIVITY LLC, an Illinois limited liability company, HALEIWA ART COMPANY, LLC, a Tennessee limited liability company, BICENTENNIAL VENTURES, LLC, a Colorado limited liability company, CANDLEBY STUDIO 1, LLC, an Indiana limited liability company, OHANA CREATIONS, LLC, a South Carolina limited liability company, 3FIFTY, LLC, a Virginia limited liability company, WOLF MOON, INC., a Colorado corporation, LAVA CREATIONS, LLC, a Missouri limited liability company, FOXKNOX ENTERPRISES, INC., an Arizona corporation, SAURIN PATEL and ESK ENTERPRISE HHI, LLC, a South Carolina limited liability company, respectfully prays for the following relief as to each of the Counts asserted hereinabove by each said Plaintiff against the Defendant or Defendants identified in each Count asserted by said Plaintiff or Plaintiffs, as applicable, as follows:

A.    Judgment awarding Plaintiffs' actual, compensatory and consequential damages in an amount to be proven at trial, including, without limitation, their loss of investment capital, loss of income, loss of assets and savings, pre-judgment interest and post-judgment interest.

B.    Judgment awarding Plaintiffs statutory damages pursuant to each of the aforementioned statutes in connection with each Count for which statutory violations have been alleged, including reasonable attorneys' fees and costs, pre-judgment interest and post-judgment interest.

C.    Judgment awarding Plaintiffs exemplary and punitive damages.

D.    Judgment awarding Plaintiffs their reasonable attorneys' fees and costs.

E.    A declaration that each Franchise Agreement is invalid and that all terms therein are voided for fraud.

F.    Such other relief as the Court finds equitable, just and proper.

Dated: October 2, 2025

Respectfully submitted,

*/s/ Robert L. Chaiken*

Robert L. Chaiken
State Bar No. 04057830
rchaiken@chaikenlaw.com
Carrie P. Kitner
State Bar No. 24074921
ckitner@chaikenlaw.com
**CHAIKEN & CHAIKEN, P.C.**
5717 Legacy Dr., Suite 250
Plano, Texas 75024
Telephone: (214) 265-0250
Facsimile:  (214) 265-1537

Andrew P. Bleiman
(*pro hac vice* application to be submitted)
andrew@marksklein.com
Mark I. Fishbein
(*pro hac vice* application to be submitted)
mark@marksklein.com
Marks & Klein, LLP
1363 Shermer Road, Suite 318
Northbrook, Illinois 60062
Telephone: (312) 206-5162
Facsimile: (732) 219-0625

**ATTORNEYS FOR PLAINTIFFS**